EAGLE ET AL V. BEARD ET AL.

1. PRACTICE IN CHANCERY : *Parties, defect of, not raised by general demurrer.*
   A general demurrer to a complaint does not raise the question of defect of parties. Nevertheless when a determination of the controversy between the parties before the court, can not be had without the presence of other parties, the court must order them to be brought in.

   If a bill has equities, it should not be dismissed for defect of parties, until refusal of the plaintiff to bring them in upon a proper order of the court to that end ; and such order should be made by the court of its own motion, if the bill present equitable grounds of relief against all the defendants when brought in. The proper practice in such cases when defect of parties is developed by the bill, and a special demurrer is interposed on that ground, is to sustain the demurrer and dismiss the bill, unless the plaintiff asks leave to amend by bringing in the other parties. But when the demurrer is general the court should look alone to the equities of the bill, and if the bill should stand *with* proper parties, it should overrule the demurrer, and order such parties to be brought in as are necessary to a full settlement of the matters in contest between the parties already before the court.

2. COUNTIES : *What they are.*
   Counties are not in any respect business corporations for private purposes, nor are they organized exclusively for the common benefit of the citizens and property holders within their limits. They are of a purely political character, constituting the machinery and essential agencies by which the free governments derived from, and modeled upon the representative and popular features of the English Constitution are upheld, and through which, for the most part, their powers are exercised.

3. SAME : *Their rights and liabilities when divided.*
   When a county is divided the old county will, without statutory provision retain the property and remain liable for the debts of the county and the severed part or new county will be released. But it is competent for the Legislature to apportion the property and the burden between the old and the new counties as, it may deem proper, and compel taxation for the purpose.

4. SAME : *How created—Legislative power over.*
   Counties, cities, and towns, are municipal corporations created by the Legislature, and derive all their powers from it, unless otherwise provided by the State Constitution.

   The Legislature has the authority to amend the charter of said corporation enlarge or diminish its powers ; extend or limit its boundaries : divide the same into two or more; consolidate two or more into one; and even abolish it altogether at its own will and discretion and according to its own views of public convenience, and without the consent of those comprising the body politic.

31

Eagle et al vs. Beard et al.

APPEAL from *Lonoke* Circuit Court in Chancery.
Hon. J. W. MARTIN, Circuit Judge.
—— *Hallum*, for appellants.

EAKIN, J. :

On the 16th of April, 1873, the General Assembly created the new county of Lonoke, out of portions of the counties ..of Pulaski and Prairie. Sec. 18 of the Act made it "the duty of " the Board of Supervisors of the counties of Pulaski, Prairie " and Lonoke, to appoint, each, a suitable person whose duty " it should be to adjust on an equitable basis, and designate " the amount of the indebtedness of the counties of Pulaski " and Prairie, which shall be assumed by the county of " Lonoke."

In order to form the new county 428 square miles of territory were detached from the county of Pulaski, and 252 square miles from the county of Prairie.

The new county was organized under the Act, and during the year, each of the counties named, appointed a commissioner to adjust the amount of the indebtedness of Pulaski and Prairie counties, to be assumed by Lonoke. They met on the 11th of March, 1874, and reported the sum of $40,000, as the debt of Lonoke county, to the county of Pulaski. This report was spread upon the records of the former county.

Afterwards, on the 7th of December, 1875, the General Assembly passed another Act to define the boundaries of Pulaski and other counties, by which an area of 45 square miles was, in one place, detached from Lonoke and transferred to Pulaski ; and in another place a like area was transferred from Pulaski to Lonoke. Parts of Pulaski were also transferred to other counties and portions of their territory added to Pulaski. By sec. 4 of the Act it was provided that the Pulaski County Court should make a *pro rata* division of the debt of the county ac-

cording to the assessed value of the property, real and personal, within the several portions of her territory thus cut off and attached to the other counties, and enter it upon the records of the court, and cause a transcript to be transmitted to the clerks of the several other counties, to be laid before their respective courts. It was made the duty of the judges to cause these transcripts to be spread upon the records of their respective courts ; and it was provided that the same should, thereafter, stand and become a valid indebtedness, due the said county of Pulaski from each of the other counties. Similar provisions were made for the other counties with regard to their trerritory, which had been added to Pulaski, to be used as a set off. Under this section, in September, 1876, the county of Pulaski transmitted to the Lonoke county clerk, a claim for the sum of $26,-327.65, which was never spread upon the records of the Lonoke County Court. Thus, if valid, the whole debt of the county of Lonoke to Pulaski, on account of her territory transferred, amounted to the sum of $66,327.65.

A similar obligation had accrued from the county of Lonoke to the county of Prairie, on account of her territory originally taken in 1873, amounting to $1,750. This obligation, although at first rejected by the county of Lonoke, was afterwards fully paid up by the scrip of the latter county.

At the October term, 1876, the County Court of Lonoke submitted to the County Court of Pulaski a proposition to pay $30,000 in discharge, and compromise, of all supposed indebtedness, growing out of the two Acts of the General Assembly. This the County Court of Pulaski accepted in a modified form, and the County Court of Lonoke authorized defendant, E. L. Beard, as County Judge, to execute the bonds of that county to the county of Pulaski, to the aggregate amount of $30.000, bearing 7 per cent. per annum interest from the 10th of October, 1876, running ten years to maturity, and at the same

time levied a tax of 5 mills on the dollar, on *all* the property of the county to pay the outstanding indebtedness. In the order for this levy the bonds for $30,000 were not alluded to in any manner. At the time this bill was filed, (January 26, 1877), the sheriff of Lonoke was about proceeding to collect this tax, and the County Judge was preparing, and about to issue said bonds.

The bill was filed by citizens and tax payers of Lonoke county, in behalf of all other citizens and tax payers of the whole county. It sets up the foregoing facts and submits that the two Acts of the General Assembly were unconstitutional, in so far as they impose a burden upon the body of the whole county ; being specially in conflict with the provision that "private property shall not be taken for public use, without just compensation," and also the fundamental law restraining the Legislature from taking the property of A. and giving it to B.

The prayer is that the County Court, and County Judge of Lonoke, be restrained from issuing said bonds ; and that they and their successors in office be enjoined from paying any portion of said supposed indebtedness, or collecting any tax for that purpose, and for general relief. Only the Judge and County Court of Lonoke are made parties defendant.

The defendant, (probably the County Judge), interposed a. demurrer in short upon the record. The record shows that "the court being of opinion that the Act of the General Assembly" of April 16th, 1873, "is constitutional and valid, and that the debt imposed by said Act on the county of Lonoke in favor of the county of Pulaski is a lawful and valid debt, complainant's bill is therefore dismissed." From which decision and action complainant appealed.

There is an obvious defect of parties to this bill, inasmuch as Pulaski county claims the bonds to be issued, and should have day in court. The demurrer being general, did not raise

this question. It is made a special ground of demurrer by the 4th clause of section 4564, but it is specially provided by section 4565, Gantt's Digest, that the demurrer shall distinctly specify the grounds of objection to the complaint, or otherwise it shall be regarded as objecting only that the complaint does not state facts sufficient to constitute a cause of action. Nevertheless it is provided by section 4481, that when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, the court must order them to be brought in.

If the bill had equities, it should not have been dismissed on this account before refusal of the complainants to bring in other parties after a proper order of the court to that end, and such an order should have been made by the court of its own motion, if the bill would have presented equitable grounds of relief against all defendants when properly brought in. The proper practice, in such cases, where defect of parties is developed by the bill itself and a special demurrer is interposed on that ground, is to sustain the demurrer and dismiss the bill, unless complainants ask leave to amend by bringing in other parties. But when the demurrer is general, the court should look alone to the equities of the bill, and if it finds that the bill should stand *with* proper parties, it should overrule the demurrer, and order such parties to be brought in as are indispensible to a full settlement of the matters in interest between the parties already before the court. We must therefore consider the action of the court in sustaining the demurrer at this stage of the pleadings, in all respects as if the county of Pulaski had been a party.

Counties are not, in any respect, business corporations for private purposes; nor are they organized exclusively for the common benefit of citizens and property holders within their respective limits. They are of a purely political character,

constituting the machinery, and essential agencies by which the free governments derived from and modeled upon the representative and popular features of the English constitution, are upheld, and through which, for the most part, their powers are exercised. The idea of a government by means of counties, comes down from the remotest period of Anglo Saxon history. It was imported to the American colonies with the common law, and entered, naturally and of course, into the frame of all their colonial governments; from whence it passed, by easy transition and necessary consequence, into the governments of the States. Our constitutions do not expressly provide for the organization of the territory into counties. This division is taken for granted. The idea of counties underlies all American constitutions. They presuppose both the existence and necessity of counties, and starting from that foundation, proceed to base thereon frames of government, in which the counties act all efficient parts. The political power is composed of representatives from counties. Through them justice is administered, the revenue collected, and the local police rendered effective. Neither the courts of justice, nor the Executive of the State, can perform any important function, except in the tribunals, or through the offices of the counties.

Having this character, so intimately connected with the public interests, so foreign to any considerations of private convenience in opposition to the common good, it logically follows that the power of the Legislature, to mould and direct these political subdivisions to effect their objects, and cause them to subserve their highest purposes, must be very great. They are the vitals of the State. Their annihilation as a system would be the destruction of the State. Their inefficiency, her paralysis. The health of the body politic requires that the Legislature should have a power over them analagous to that

of the individual over his own limbs and vitals. It is germain to the subject to allude to the correlative duty of the political power, not only of the States, but of the Federal government, composed of all the States, to see to it, that the counties suffer no detriment from the encroachment of any power which may tend to crush their existence, or paralyse their efficiency. Such attacks, making imperceptible advances, and gathering strength from precedents, endanger the foundations of the American system of constitutional government.

Returning to the matter of power, it has been long held with regard to the towns in the New England States, which, there, are political agencies as our counties are here, and with regard to counties also, that upon their division, the old county or town will, without statutory provision, retain the property, and remain liable for the debts. But it is competent for the legislature to *apportion* the property and the burden between the old and new towns or counties, as it may deem proper, and compel taxation for the purpose. See the cases collected in note 2 on p. 176 of Mr. Cooley's Work on Taxation. In some of these cases property originally inuring to the use of a portion of the citizens of a town, has been applied to the benefit of all others brought into the same town with them ; and in others, burdens have been imposed on new additions which did not appertain to them before. The power to create new towns or counties, and change the boundaries of old ones, is indispensable to wholesome government, in the ever-varying changes of condition attending our progress in civilization ; and that power could not be exercised with sufficient freedom if the Legislature could not, in doing so, apportion benefits and burdens amongst those presumed to be benefited by the change.

This is not, in any true sense, taking the property of A. for the benefit of B. It is simply imposing a tax upon the

property of A. and B. together for the direct benefit of the particular political subdivision of the State, and for the general benefit of the whole State in so arranging these political subdivisions, that justice may be administered, the local police provided for, the revenue collected, and political representation secured in the most efficient manner, without injustice to creditors. It is, indeed, like all taxation, taking private property for public uses, but the compensation is presumed in the benefits of the new organization in promoting the welfare and convenience of all the citizens, regardless of locality.

The principles which govern, in such cases, have been recently so thoroughly and clearly discussed in the case of *Laramie Co.* v. *Albany Co.*, 2 *Otto*, 307, and authorities so fully quoted, that nothing is left to be added.

"Counties, cities and towns," says Mr. Justice Clifford, in that case, "are municipal corporations, created by the authority of the Legislature ; and they derive all their powers from the source of their creation, except where the Constitution of the State otherwise provides." * * * "The Legislature has authority to amend the charter of such a corporation, enlarge or diminish its powers ; extend or limit its boundaries ; divide the same into two or more ; consolidate two or more into one ; and overrule its action whenever it is deemed unwise, impolitic or unjust ; and even abolish the municipality altogether, in the legislative discretion," citing *Cooley on Court*, 2 Ed., 192, and this may be done "at the mere will of the Legislature, according to its own views of public convenience, and without any necessity for the consent of those comprising the body politic."

He quotes with approbation from the opinion of Parsons, C. J., in the early case of *Windham* v. *Portland*, 4 Mass., 589, as follows : "If a part of its territory and inhabitants are separated from it by annexation to another, or by the erec-

tion of a new corporation, the former corporation still retains all its property, powers, rights and privileges; and *remains subject to all its obligations and duties; unless some new provision should be made by the act authorizing the separation.*"

"Institutions of this kind," proceeds Mr. Justice Clifford, "whether called counties or towns, are the auxiliaries of the State in the important business of municipal rule, and cannot have the least pretention to sustain their privileges, or their existence, upon anything like a contract between them and the Legislature of the State; because there is not, and cannot be, any reciprocity of stipulation; and their objects and duties are utterly incompatible with everything of the nature of a compact. Instead of that, the constant practice is, to divide large counties and towns, and to consolidate small ones, to meet the wishes of the residents, or to promote the public interests, *as understood by those who control the action of the Legislature.* Opposition is sometimes manifested, but it is everywhere acknowledged that the Legislature possesses the power to divide counties and towns at their pleasure; and to apportion the common property *and the common burdens* in such manner as to them may seem reasonable and equitable."

Quoting from THOMPSON, C. J., in the case of *Burns* v. *Clarion Co.*, 62 Penn., St. 425, he says that these divisions had their origin in the necessities and convenience of the people, but this does not withdraw them from the supervision and control of the State in matters of domestic government. "Proof of that is found in the fact that the Legislature often exercises the power to exempt property liable to taxation; and in many other instances imposes taxes on what was before exempt, or increases the antecedent burdens in that behalf."

Real or seeming hardships may arise in every exercise of such power. They are unavoidable in all cases where the municipalities own property, or are burdened with debts.

The solution of the difficulties belongs to the legislative discretion, in the exercise of which, individual hardship must of necessity yield to the public good.

These views as to the nature of counties, and the powers of the Legislature over them, were early adopted and have been followed by this court, notably, in the case of *Pulaski Co.* v. *Irvin*, 4 Ark., 489, and *English* v. *Oliver*, 28 Ark., 317. In the latter case the power of the Legislature was upheld, to compel every county in the State to receive for its taxes for county purposes the scrip of the State, which at that time was much depreciated. This, in solvent counties, owing no debts, was in effect and ultimate consequence, an imposition of an additional tax upon the property of the county to supply the depreciation, and an exercise of authority which would never have been pretended in the case of private corporations or individuals. It must rest alone upon the ground that counties are merely political organizations, parts of the State government, and wholly subject to legislative control. See also, *Loftin, sheriff*, v. *Watson*, 32 Ark., 422, and *Cole* v. *White Co.*, Ib. 51. In the last case Mr. Justice Harrison distinctly announces the main body of principles declared in Laramie v. Albany (counties) *supra*, with numerous citations of authority.

It results that the Legislature had the power to create the county of Lonoke out of portions of the respective territories of Pulaski and Prairie, and to apportion the burdens of their respective debts, compelling Lonoke to assume a part, and providing the mode of ascertaining it, even against the will of the inhabitants of the new county, if any objection had been made. These were the conditions imposed upon the people of the new county, under which they were to enjoy the privilege of having a county for their better convenience, with right to tax for its support, and for general police purposes, territory formerly belonging to other counties.

Had the Legislature, as it might have done, stopped with the creation of Lonoke, making no provision for the debts of Pulaski and Prairie, the portions from those counties would not have remained liable for the old debts. The burden of those debts did not constitute a lien upon these fractions, which might be followed by creditors into the new counties, and their payment enforced by the taxing power. They would have been released, and would now, if it should be held that the section of the act imposing a portion of the old Pulaski debt upon the whole of Lonoke, was unconstitutional. It would leave no provision for taxing these fractions separately, and *the whole* of the debt would be thrown upon the old county, without its old resources. The Legislature thought it more equitable to distribute the burden over the whole county of Lonoke, and this court does not question its power, nor will its discretion either in the original act or the subsequent one, changing the boundaries, and imposing upon Lonoke an additional burden. Comity towards a co-ordinate department of the government forbids the discussion of matters of discretion, when the power is conceded. The Chancellor did not err in holding the act for the creation of Lonoke county constitutional in all its parts.

This first debt was imposed upon Lonoke before, and existed at the time of the adoption of the Constitution of 1874. She had a right to levy a tax of 5 mills on the dollar to pay that class of indebtedness. The levy is a general one, without reference to any particular debt, and there was no equity to enjoin it.

In the case of *Worthen, County Clerk*, v. *Badgett et als,* 32 Ark., 496. This court held the Act of March 6th, 1875, authorizing the issuance of bonds by counties to be unconstitutional. When the compromise for the issuance of $30,000 in bonds was made between the two counties in 1876, there

was no law enabling Lonoke county to carry out the terms. No county had any power to issue interest-bearing bonds for such purposes. The issuance of them would unnecessarily ·endanger the rights of the tax payers of Lonoke county and lead at least to multiplicity of suits. The prayer to enjoin the issuance of these bonds should have been entertained, and the demurrer overruled. For this error the decree must be reversed and the cause remanded with directions to the Chancellor to overrule the demurrer, and to order the county of Pulaski to be made a party, and brought in, before any answer shall be required, or in case complainants may decline to do so, to ·dismiss the bill for want of proper parties.