BATES *v.* CITY OF LITTLE ROCK.

4912

319 S. W. 2d 37

WILLIAMS *v.* CITY OF NORTH LITTLE ROCK.

4913

Opinion delivered December 22, 1958.

[Rehearing denied January 19, 1959]

*George Howard, Jr.* of Pine Bluff, Ark. and *Robert L. Carter,* New York, N. Y., for appellant.

*Gardner A. A. Deane, Jr. & Joseph C. Kemp,* for appellee.

*George Howard, Jr.* of Pine Bluff, Ark. and *Robert L. Carter,* New York, N. Y., for appellant.

*Reed Thompson,* for appellee.

ED. F. McFADDIN, Associate Justice. The issue on these appeals is the constitutionality of the so-called ''Bennett Ordinance'', which was enacted by the City of Little Rock, and also by the City of North Little Rock. Appellant Bates was fined $25.00 for violation of the Little Rock ordinance; and appellant Williams was fined $25.00 for violation of the North Little Rock ordinance. There were separate appeals; but the cases are disposed of in this single opinion since constitutionality is the point at issue in each case, and the claims and defenses of each appellant are the same.

On October 14, 1957, the City of Little Rock[1] adopted its Ordinance No. 10638 (here under attack), reading in its entirety as follows:

''An Ordinance Requiring Certain Organizations Functioning or Operating Within the City of Little Rock, Arkansas to List Certain Information with the City Clerk: And For Other Purposes.

''Whereas, it has been found and determined that certain organizations within the City of Little Rock, Arkansas, have been claiming immunity from the terms of Ordinance No. 7444, as amended, governing the payment of occupation licenses levied for the privilege of doing business within the city, upon the premise that such organizations are benevolent, charitable, mutual benefit, fraternal, or non-profit, and

''Whereas, many such organizations claiming the occupation license exemption are mere subterfuges for

---

[1] About the same time the City of North Little Rock adopted its Ordinance No. 2683; and the Little Rock ordinance and the North Little Rock ordinance are in all substantial respects entirely similar.

businesses being operated for profit which are subject to the occupation license ordinance;

"Now, Therefore, Be It Ordained by the City Council of the City of Little Rock, Arkansas:

"Section 1. The word 'organization' as used herein means any group of individuals, whether incorporated or unincorporated.

"Section 2. Any organization operating or functioning within the City of Little Rock, including but not limited to civic, fraternal, political, mutual benefit, legal, medical, trade, or other organization, upon the request of the Mayor, Alderman, Member of the Board of Directors, City Clerk, City Collector, or City Attorney, shall list with the City Clerk the following information within 15 days after such request is submitted:

A. The official name of the organization.

B. The office, place of business, headquarters or usual meeting place of such organization.

C. The officers, agents, servants, employees or representatives of such organization, and the salaries paid to them.

D. The purpose or purposes of such organization.

E. A financial statement of such organization, including dues, fees, assessments and/or contributions paid, by whom paid, and the date thereof, together with the statement reflecting the disposition of such sums, to whom and when paid, together with the total net income of such organization.

F. An affidavit by the president or other officiating officer of the organization stating whether the organization is subordinate to a parent organization, and if so, the name of the parent organization.

"Section 3. This ordinance shall be cumulative to other ordinances heretofore passed by the City with ref-

erence to occupation licenses and the collection thereof.

"Section 4. All information obtained pursuant to this ordinance shall be deemed public and subject to the inspection of any interested party at all reasonable business hours.

"Section 5. Any section or part of this ordinance declared to be unconstitutional or void shall not affect the remaining sections of the ordinance, and to this end the sections or sub-sections hereof are declared to be severable.

"Section 6. Any person or organization who shall violate the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than $50.00 nor more than $250.00, and each day of violation shall constitute a separate offense. The City Council in the enforcement of this ordinance shall have the power to seek injunctive relief.

"Section 7. It has been found and determined by the City Council that certain organizations operating within the City of Little Rock have failed to comply with the terms of Ordinance No. 7444, as amended, governing the payment of occupation licenses, and as a result thereof, needed revenue is being lost, and the enactment of this ordinance will provide for more efficient administration of such ordinance. Therefore, an emergency is declared to exist, and this ordinance being necessary for the preservation of the public peace, health, and safety, shall take effect and be in force from and after its passage and approval."

Daisy Bates, a resident of Little Rock, is the State President of the National Association for the Advancement of Colored People (hereinafter referred to by the letters "NAACP"); and Birdie Williams, a resident of North Little Rock, is President of the North Little Rock Branch of the NAACP. Daisy Bates was notified to

comply with the Little Rock ordinance, and Birdie Williams was notified to comply with the North Little Rock ordinance. Each furnished all the information required by the ordinance except that part of Section E, which requires that there be furnished: "A financial statement of such organization, including dues, fees, assessments, and/or contributions paid, by whom paid, and the date thereof, together with the statement reflecting the disposition of such sums, to whom and when paid, together with the total net income of such organization". In refusing to furnish the information required by Section E, Daisy Bates (by her attorney) advised the City of Little Rock:

"E. The financial statement is as follows:

January 1, 1957 to December 1, 1957

| | |
|---|---|
| Total receipts from memberships and contributors | $1,791.55 |
| Total expenditures | 1,491.46 |
| Balance on Hand | $ 300.09 |

"F. I am attaching my affidavit as president indicating that we are a Branch of the National Association for the Advancement of Colored People, a New York Corporation.

"We cannot give you any information with respect to the names and addresses of our members and contributors or any information which may lead to the ascertainment of such information. We base this refusal on the anti-NAACP climate in this State. It is our good faith and belief that the public disclosure of the names of our members and contributors might lead to their harassment, economic reprisals, and even bodily harm. Moreover, even aside from that possibility, we have been advised by our counsel, and we do so believe that the City has no right under the Constitution and laws of the United States, and under the Constitution and laws of the State of Arkansas to demand the names and addresses of our members and contributors.

We assert on behalf of the organization and its members the right to contribute to the NAACP and to seek under its aegis to accomplish the aims and purposes herein described free from any restraints or interference from City or State officials. In addition we assert the right of our members and contributors to participate in the activities of NAACP anonymously, a right which has been recognized as the basic right of every American citizen since the founding of this country.

"I am enclosing herein a copy of the Constitution of the National Association for the Advancement of Colored People, and the Constitution and By-Laws for Branches of the National Association for the Advancement of Colored People."

A similar refusal for similar reasons was made by Birdie Williams, concerning the North Little Rock request. For refusal to furnish the requested information each appellant was fined $25.00 by the Circuit Court; and each in prosecuting her appeal to this Court raises this Federal issue: the ordinance involved—insofar as it requires the names and addresses of the members of and contributors to, the local branch of the NAACP, is an invasion of the rights guaranteed by the amendments to the Constitution of the United States.[2] All the other points urged blend into the one just stated.

---

[2] To support the contentions for immunity from furnishing the requested information appellants stated in the lower Court and reiterate here: ". . . that Ordinance 10,638 is an unjustified interference with defendant's rights of freedom of speech and assembly as secured and protected by the Constitution of the State of Arkansas and by the Constitution of the United States of America—namely, the First Amendment as assimilated in the Fourteenth Amendment of the Federal Constitution. It is the contention of the defendant that the City has not shown that there is a compelling reason or a justifiable cause for demanding the contributors' list to the defendant in this case. The defendant would like to cite two United States Supreme Court cases wherein the Supreme Court held that the request of membership lists and contributors' lists was a direct violation of this fundamental constitutional right—namely, freedom of speech. The case is *Wieman vs. Updegraff*, 344 U. S. 183, and there the court said that the right to assemble freely, to join an organization and to participate in its activities is one of the protected rights guaranteed under the Constitution. In *Watkins vs. U. S.*, the Chief Justice of the United States wrote: 'There is no general authority to expose the private rights of an individual without justification'. In

The appellants have cited and discussed, *inter alia*: *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 81 L. Ed. 893, 57 S. Ct. 615; *Pierce* v. *Society of Sisters,* 268 U. S. 510, 69 L. Ed. 1070, 45 S. Ct. 571; *Sweezy* v. *New Hampshire,* 354 U. S. 234, 1 L. Ed. 2d 1311, 77 S. Ct. 1203; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 80 L. Ed. 660, 56 S. Ct. 444, *Bridges* v. *Calif.,* 314 U. S. 252, 86 L. Ed. 192, 62 S. Ct. 190; *Pennekamp* v. *Florida,* 328 U. S. 331, 90 L. Ed. 1295, 66 S. Ct. 1029, *National Broadcasting Co.* v. *U. S.,* 319 U. S. 190, 87 L. Ed. 1344, 63 S. Ct. 997, *Burstyn* v. *Wilson,* 343 U. S. 495, 96 L. Ed. 1098, 72 S. Ct. 777; *DeJonge* v. *Oregon,* 299 U. S. 353, 81 L. Ed. 278, 57 S. Ct. 255; *Joint Anti-Fascist Refugee Committee* v. *Mc-Grath,* 341 U. S. 123, 95 L. Ed. 817, 71 S. Ct. 624; *Thornhill* v. *Alabama,* 310 U. S. 88, 84 L. Ed. 1093, 60 S. Ct. 736; *NAACP* v. *Patty,* 159 F. Supp. 503 (E. D. Va. 1958); and *American Communications Assn.* v. *Douds,* 339 U. S. 382, 94 L. Ed. 925, 70 S. Ct. 674. Also in the oral argument before this Court appellants laid great stress on the case of *NAACP* v. *Alabama,* 357 U. S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163, which was decided after the filing of appellant's brief in this Court. It was claimed that *NAACP* v. *Alabama* was conclusive against the validity of the ordinances here challenged.

It would unduly extend this opinion to review each of the above cases or those cited by appellees. For purposes of this opinion we by-pass the point urged by the Cities — that anonymity is a personal defense and can be claimed only by the organization itself and not by one for it — and we proceed to state our conclusions on the claims that the appellants have made:

I. The primary purpose of each of the ordinances here involved is to obtain revenue for the Cities, and

*Sweeney vs. New Hampshire,* the Court said: 'We do not now conceive of any circumstance wherein a State interest would justify an infringement upon these fields—freedom of speech and freedom of assembly'. It is our contention that the City of Little Rock has not shown that there is a compelling reason or a justifiable cause for requiring the defendant to produce the names of its members and the names of its contributors."

the obtaining of the membership list and the listing of contributors is merely to aid in determining the matter of tax status. The NAACP is not being required to furnish any information other than that which is required of all other organizations seeking immunity from the payment of an occupation tax.. The record here shows that the information required by the ordinances involved was required of all organizations claiming tax exemption; and the information was furnished by all of the requested organizations except the NAACP.

In Arkansas, municipalities are creatures of the State and have the powers which the State gives them. (*Eagle* v. *Beard,* 33 Ark. 497; *City of Hot Springs* v. *Gray,* 215 Ark. 243, 219 S. W. 2d 930.) By Act No. 294 of 1937 (now found in § 19-4601 *et seq.* Ark. Stats.) the Arkansas Legislature authorized municipalities to enact ordinances levying an occupation tax. This was a revenue measure. In *Talley* v. *Blytheville,* 204 Ark. 745, 164 S. W. 2d 900, we held that this act of 1937 was authority for cities to enact occupation tax ordinances as revenue producing measures. Our subsequent cases have followed that holding. In 1947 the City of Little Rock passed its ordinance No. 7444, captioned, "An Ordinance Establishing an Annual Privilege License Tax for Various Businesses, Occupations, and Professions within the City of Little Rock Providing for the Amount Thereof . . . " This ordinance has been amended numerous times by changing the amount to be charged various businesses and professions and adding other businesses and professions as subjects of taxation.

On November 22, 1948 the City of Little Rock passed its Ordinance No. 7809, entitled, "An Ordinance Relieving Charitable Institutions from the payment of Privilege Taxes to the City of Little Rock, Amending Ordinance No. 7444, and For Other Purposes".[3] Thus, by the

---

[3] The entire text of this Ordinance is as follows:
"WHEREAS, There are certain charitable institutions in the City of Little Rock which engage in the business of manufacturing, and selling, or other lines of endeavor in order to raise funds for charitable purposes

Ordinance No. 7809,. certain charitable or non-profit organizations became exempt from the privilege tax, even though such organization engaged in some kind of business. Such was the status of the law when, on October 14, 1957, the City of Little Rock enacted its ordinance No. 10638 first copied herein. The City had reason to believe that some of the organizations, who were claiming immunity under Ordinance No. 7809, were not really charitable or non-profit organizations. The City wanted to ascertain what was being done by these organizations claiming exemptions; and so the City passed its ordinance requiring such organization claiming immunity from occupation tax to furnish the City certain information.[4]

The NAACP is not being required to furnish any information other than is furnished by all other organizations claiming immunity from taxation. Furnishing of membership lists of non-profit organizations in Arkansas, as a basis of being determined a non-profit organi-

---

such as the assistance of the needy, and the care and education of the crippled and the blind, and

"WHEREAS, These institutions are performing in an unselfish manner a service to the community and are rendering untold aid and comfort to persons who are physically handicapped, and

"WHEREAS, It is believed to be in the best interest of the City and the people of the City of Little Rock to foster and promote such activity on the part of these institutions,

"NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF LITTLE ROCK, ARKANSAS:

"SECTION 1. Each charitable, eleemosynary, non-profit organization whose purpose is to assist the needy and bring care, training and comfort to the physically handicapped, is hereby exempt from the payment of a privilege tax for the privilege of carrying on such business or occupation within the City of Little Rock.

"SECTION 2. Ordinance No. 7444 is hereby amended to conform to the provisions of this ordinance.

"SECTION 3. All ordinances and parts of ordinances in conflict herewith are hereby repealed."

[4] Section 7 of Art. 5 of the Constitution and By-Laws for Branches of the NAACP says that the local branches shall remit, ". . . the net proceeds of each entertainment or fund raising effort by a Branch shall be divided equally between the Branch and the National Office . . ." When we consider that shows and amusement places and other forms of entertainment are taxable under the occupation tax ordinance, certainly the City would have some right to ascertain who was belonging to the NAACP and who was making contributions to it, because it was claiming an immunity and yet sending part of its money for some other use outside of the State.

zation, has been the rule in Arkansas since 1875. Act No. 51 of 1875 (as now found in § 64-1301 Ark. Stats.) provides for the incorporation of a non-profit organization, and Section 2 of that Act (as now found in § 64-1302 Ark. Stats.) says:

"Any association of persons desirous of becoming incorporated, under the provisions of this act, shall file with the Clerk of the Circuit Court and Recorder for the proper county a copy of their constitution or articles of association, *and a list of all the members,* together with a petition to said court for a certificate of incorporation under the provisions of this act (Emphasis supplied.) So it is nothing new to require a non-profit organization to furnish a list of all of the members.[5] The same rule that applies to such organizations seeking corporate status is sought here to be applied to such organizations that seek privilege tax exemptions. The record shows that the rule is being uniformly applied to all organizations.

Requiring the furnishing of information to the taxing power is not an unconstitutional invasion of the freedoms guaranteed. A taxpayer is required to file an income tax return giving the names of the sources of revenue (as, for instance, the name of the corporation and the amount of the dividend received from it); yet all this has been held to be within the power of the Sovereign. See *Hubbard* v. *Mellon,* 5 Fed. 2d 764. Furthermore, the United States Supreme Court, in *U. S.* v. *Harriss,* 347 U. S. 612, 98 L. Ed. 989, 74 S. Ct. 808, upheld a law which required the furnishing of the *names of contributors* and *amounts* paid by each to any person engaged in seeking to obtain legislation. So the rationale of the holdings seems to be: when the required information is a mere incident to a permissible legal result, then the information should be furnished. That is the situation in the case at bar; and we find nothing in *Speiser* v. *Randall,* 357 U. S. 513, 2 L. Ed. 2d 1460, 78 S. Ct.

---

[5] In 8 Ark. Law Review 110 there is an interesting case note entitled: "Illegal activities by non-profit corporations".

1332, or in *First Unitarian Church of Los Angeles* v. *Los Angeles County,* 357 U. S. 545, 2 L. Ed. 2d 1484, 78 S. Ct. 1350, which affects the conclusion here reached

II. The claim, that it may hurt the prospects of the NAACP to furnish to the City its membership list and the names of the contributors, does not make the ordinance unconstitutional. The Constitutional Amendments do not guarantee anonymity at all events. If NAACP wants tax immunity, it should comply with the ordinance. It cannot have immunity from taxation without complying with the ordinance. This is but an application of the old statement that one cannot both eat his cake and keep it. The case of *NAACP* v. *Alabama,* 357 U. S. 449, 2 L. Ed. 2d 1488, affords the appellant no protection in this case. In the Alabama case the prime purpose of the procedure instituted by the Attorney General of Alabama was to obtain information whereby Alabama could force the NAACP out of the State. So the Supreme Court of the United States held that NAACP was not required to disclose against itself. In the case at bar, the purpose of the ordinance is to determine the tax status of one seeking to claim immunity from occupation tax. The ultimate aim in *NAACP* v. *Alabama* was to stop the activities of NAACP; but in the case at bar, the disclosure of NAACP's list of members and contributors is a mere incident to see if legal taxation is being evaded. The ordinance here under attack does not single out NAACP and require information of it only: rather, the ordinance requires information of all organizations seeking exemption from privilege tax. Other organizations have complied: why should this one have immunity as though it were a favored child?

The United States Supreme Court has quite recently recognized that a law applicable to all persons is valid, even when attacked by those who disliked the law involved. In the case of *Shuttlesworth* v. *Birmingham Board of Education,* 162 Fed. Supp. 372, four Negro children sought to test the constitutionality of the Alabama

830

School Placement Law and to enjoin the City Board of Education from enforcing the law. The three-Judge Court, in an opinion by Circuit Judge Rives, held that the Alabama School Placement Law furnished legal machinery for an orderly administration of the public schools by admission of qualified pupils upon a basis of individual merit, without regard to their race or color, and that the law was not unconstitutional on its face. The case was appealed to the Supreme Court of the United States and that tribunal affirmed the three-Judge Court in a per curiam order of November 24, 1958, saying: "The motion to affirm is granted and the judgment is affirmed upon the limited grounds on which the District Court rested it's decision". When we study the decision of the District Court, we see that the Alabama School Placement Law was upheld because there was no showing that it was not being uniformly administered. The same thing is true in each of the ordinances here under attack: there is nothing in the record before us to show that these ordinances were enacted for any purpose other than those stated in the ordinances; and there is no showing that the ordinances are being enforced other than uniformly.

We find no error, and the judgment in each case is affirmed.

HOLT and GEORGE ROSE SMITH, JJ., dissent.