NATIONAL ASSOCIATION FOR AD-
VANCEMENT OF COLORED PEO-
PLE, Plaintiff

v.

Bruce BENNETT, Attorney General of
State of Arkansas, Defendant.

Civ. No. 3664.

United States District Court
E. D. Arkansas, W. D.

Oct. 8, 1959.

Robert L. Carter, New York City,
and George Howard, Jr., Pine Bluff, Ark.,
for plaintiff.

Bruce Bennett, Atty. Gen., pro se, J.
Frank Holt, Little Rock, Ark., E. W.
Brockman, Jr., N. J. Gantt, Jr., of Cole-
man, Gantt & Ramsay, Pine Bluff, Ark.,
for defendant.

Before SANBORN, Circuit Judge, and
MILLER and HENLEY, District Judges.

PER CURIAM.

This is an action brought by the National Association For The Advancement of Colored People (NAACP) against the Attorney General of the State of Arkansas and the County Judges and Prosecuting Attorneys of Pulaski and Jefferson Counties in that State for a declaratory judgment to the effect that Acts 12, 13, 14 and 16 of the Second Extraordinary Session of the 61st General Assembly of the State of Arkansas, 1958, are violative of the 14th Amendment to the Constitution of the United States, and to restrain the enforcement of those statutes. Subsequent to the filing of the complaint, the defendants filed motions to stay proceedings in this Court until said statutes had been authoritatively construed by the Supreme Court of Arkansas, which motions were resisted by the plaintiff.

On January 17, 1959, the motions were heard by this statutory three-judge court (28 U.S.C.A. § 2281 et seq.) and were granted.[1] In the course of the argument plaintiff placed heavy reliance upon the decision of the district court in N.A.A.C.P. v. Patty, D.C.Va., 159 F. Supp. 503, holding that where State statutes challenged upon federal constitutional grounds are clear and unambiguous, the federal courts should proceed to pass upon the constitutional questions presented without awaiting prior action by the State courts. It was the position of the plaintiff that the statutes were clear and unambiguous, that they presented no problems of construction, and that the court should proceed to determine their validity under the federal constitutional provision above mentioned.

In rejecting the argument of the plaintiff this court relied upon the "general doctrine established by the Supreme Court in many cases * * * that where the constitutionality of an unconstrued state statute is challenged in a federal trial court as violative of the Federal Constitution, the court should stay its hand, but retain jurisdiction of the case until all doubts as to the meaning and scope of the statute have been resolved in the courts of the State". [178 F. Supp. 189.] And we cited Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983; and Government and Civic Employees Organizing Committee, C.I.O. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894.

While this court recognized that there is "respectable authority for the proposition that where the unconstitutionality of a statute is clear, it is unnecessary for the court to await state court adjudication", and cited Patty, supra, we went on to say:

"Assuming, without deciding, that the unconstitutionality of the Arkansas statutes in suit is obvious, as the plaintiffs claim, it reasonably can be believed that it would be more wholesome and more logical to permit the courts of Arkansas to rule upon their validity in the first instance than to have this court do so, and that it would be more in harmony with the philosophy underlying the doctrine established by the Supreme Court relative to the federal courts affording the state courts an opportunity to pass upon the construction and effect of local statutes.

"We think that under circumstances such as this court is confronted with, it has discretion as to whether it will proceed to an adjudication or whether it will require the plaintiff to seek its remedy in the courts of the State.

"We, therefore, grant the defendants' motions, and will 'retain jurisdiction until efforts to obtain an appropriate adjudication in the state courts have been exhausted'".

1. In connection with this action the court filed a per curiam opinion 178 F.Supp. 188.

From the order granting the defendants' motions the plaintiff appealed to the Supreme Court, and while the appeal was pending, the Court reversed the decision of the district court in the Patty case, supra, holding that the latter court should not have passed upon the validity of the Virginia statutes there involved until they had been construed by the courts of that State. Harrison v. N.A.A. C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed. 2d 1152.

Subsequently, however, on June 22 of the current year the Supreme Court also reversed the decision of this court, using the following language:

"When the validity of a state statute, challenged under the United States Constitution, is properly for adjudication before a United States District Court, reference to the state courts for construction of the statute should not automatically be made. The judgment is vacated and the case is remanded to the United States District Court for the Eastern District of Arkansas for consideration in light of Harrison v. N.A.A. C.P. * * *." N.A.A.C.P. v. Bennett, 360 U.S. 471, 79 S.Ct. 1192, 3 L.Ed.2d 1375.

The mandate of the Supreme Court having been filed in due course, this Court called for further briefs from the parties and again heard oral argument.

In its brief and argument the plaintiff concedes that Acts 14 and 16 [2] are reasonably susceptible of a construction by the courts of Arkansas "which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem". It is insisted, however, that Act 12 is similar to other Arkansas enactments that have been construed and upheld by the Arkansas Supreme Court, so that no substantial problem of construction is presented with respect to it; and it is urged that Act 13 is free from ambiguity and that "there is no construction to be placed on it to avoid the constitutional issue". Upon these premises, plaintiff prays that this court now proceed to pass upon the constitutionality of those two statutes.

It is clear from a reading of the opinion in Harrison that a reference to the State courts should be made where the challenged statute is fairly open to construction. The following language from that opinion is pertinent:

"According every consideration to the opinion of the majority below, we are nevertheless of the view that the District Court should have abstained from deciding the merits of the issues tendered it, so as to afford the Virginia courts a reasonable opportunity to construe the statutes in question. * * *

"This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts', Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447, as their 'contribution * * * in furthering the harmonious relation between state and federal authority * * *.' Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971. In the service of this doctrine, which this Court has applied in many different contexts, no principle has found more consistent or clear expression than

---

**2.** Act 14 purports to define and punish barratry; Act 16 is entitled "An Act to Prohibit the Fomenting and Agitation and Litigation That Interferes With the Orderly Administration of Public Schools and Institutions of Higher Learning; To Prohibit The Solicitation, Receipt, or Donation of Funds for the Purpose Of Filing or Prosecuting Lawsuits; To Define Maintenance; To Provide a Penalty For any Violation Hereof; And For Other Related Purposes".

that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them * * *. This principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional adjudication. * * *

"The present case, in our view, is one which calls for the application of this principle, since we are unable to agree that the terms of these three statutes leave no reasonable room for a construction by the Virginia courts which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.

" * * * All we hold is that these enactments should be exposed to state construction or limiting interpretation before the federal courts are asked to decide upon their constitutionality, so that federal judgment will be based on something that is a complete product of the State, the enactment as phrased by its legislature and as construed by its highest court * * *". 360 U.S. at pages 176–177 and 178, 79 S.Ct. at page 1030.

When the motions for a stay of proceedings were before this Court originally, each side appeared to be willing to concede, for its own particular reasons, that the Arkansas statutes under consideration were free from ambiguity.[3] In view of this apparent attitude on the part of both sides, we were willing to assume

without deciding "that the unconstitutionality of the * * * statutes in suit is obvious * * *", and to base our decision on what we supposed to be our discretion in a case of this kind. That the Court was willing to indulge that assumption did not imply that its members in fact felt that said statutes do not involve questions of interpretation, or that they are not susceptible to any construction that would render them constitutional, or that they are obviously unconstitutional. On the contrary, the Court was convinced then and is convinced now that these enactments, including Acts 12 and 13, do require construction by the Arkansas courts, and that following such construction the federal constitutional questions either may not survive at all or may be posed in a different frame. As noted, the plaintiff itself now concedes such to be the case with respect to Acts 14 and 16.

Taking up Act 12 first, its title is: "An Act To Provide Assistance In The Administration and Financing Of The Public Schools of Arkansas And For the Maintenance Of Law, Peace and Order In The Operation Of The Public Schools Requiring Certain Organizations To File Certain Information Under Oath In The County Clerk's Office Upon The Request Of The County Judge; Providing A Penalty For Violations and For Other Purposes".

The Act consists of eight sections, including a declaration of purpose (Section 1), a broad definition of the term "organization" (Section 2),[4] a provision for the payment of a fee of $2 to the county clerk for recording the information called for by the statute (Section 6), a severability provision (Section 7), and an "emergency clause" (Section 8).

The declared purpose of the Act is "to provide for the maintenance of law, peace

---

3. The Attorney General of Arkansas, who argued in favor of the motions, appeared to be understandably reluctant to criticize the statutes as ambiguous or open to construction. The plaintiff, on the other hand, desired to stay in this court and avoid State court litigation; hence it was

to its interest, at least at that time, to consider the enactments to be clear and unambiguous.

4. That definition is clearly broad enough to include the plaintiff and its local branches or chapters in Arkansas.

and order in the operation and administration of the public schools by requiring certain organizations engaged in activities designed to hinder, harass, and interfere with the powers and duties of the State of Arkansas to control and operate its public schools, and which activities may result in a serious disturbance of the public peace, to register and report certain information upon the request of the county judge". There is also a declaration that in the judgment of the General Assembly "the disclosure of such information is essential to the health, safety and general welfare of the people of Arkansas."

Section 3 of the Act provides that any "organization" functioning within any county in Arkansas and engaged "in activities designed to hinder, harass and interfere with the powers and duties of the State of Arkansas to control and operate its public schools, upon the request of the county judge of such county shall file with the county clerk's office (certain information) subscribed under oath before a notary public, within seven days after such request is made * * *." The information to be furnished consists of: A. The official name of the organization and list of members. B. The office, place of business, headquarters or usual meeting place of the organization. C. The officers, agents, servants, employees or representatives of the organization. D. The organization's purpose or purposes. E. A statement disclosing whether the organization is subordinate to a parent organization, and, if so, the name of the parent organization.

Section 4 provides that the information furnished shall be a public record. And Section 5 provides that a violation of the statute shall be a misdemeanor, punishable by a fine of not less than $50 nor more than $200, and that each day of violation shall constitute a separate offense. It is further provided that all fines collected shall be forwarded to the State Treasurer and by him credited to the common school fund.

 When the operative section of the Act (Section 3) is considered, a question immediately arises as to whether the statute applies to the plaintiff at all in view of the latter's stated aims and purposes as disclosed by the complaint and by plaintiff's certificate of incorporation, a copy of which document is attached to the complaint as an exhibit. Of course, if the statute does not apply to the plaintiff, then the latter has no standing to challenge its validity. Cf. Harrison v. N.A.A.C.P., supra, 360 U.S. at page 177, 79 S.Ct. at page 1030.

The complaint alleges that the NAACP is a non-profit New York corporation; that its basic aims and purposes are to secure the elimination of all racial barriers which "deprive Negro citizens of the privileges and benefits of equal citizenship rights in the United States"; and that, as disclosed by its articles of incorporation, its principal objectives are as follows:

"'* * * voluntarily to promote equality of rights and eradicate caste or race prejudice among the citizens of the United States; to advance the interest of colored citizens; to secure for them impartial suffrage; and to increase their opportunities for securing justice in the courts, education for their children, employment according to their ability, and complete equality before the law.

"'To ascertain and publish all facts bearing upon these subjects and to take any lawful action thereon; together with any kind and all things which may lawfully be done by a membership corporation organized under the laws of the State of New York for the further advancement of these objects.'"

Obviously, the applicability of Act 12 to the plaintiff, its affiliated branches, and members depends upon whether their activities in pursuit of the organization's announced aims and objectives, which were said to be lawful in themselves in Shelton v. McKinley, D.C.Ark., 174 F. Supp. 351, 358, would be considered as "designed to hinder, harass and interfere with the powers and duties of the State

of Arkansas to control and operate its public school", as that phrase is used in the statute. That is purely a question of State law, and can be answered authoritatively only by the Supreme Court of Arkansas. That Court may hold that all activities of the NAACP fall within the statute, or that none of them do, or that some do and some do not. Until the scope of Section 3 has been authoritatively determined by the Supreme Court of Arkansas this Court cannot say that it is passing on something that is a "complete product of the State."

In the plaintiff's brief it is said: "As far as Act 12 is concerned, the Arkansas Supreme Court has already construed and upheld as valid several similar city ordinances on the ground that the state government has a right to see membership lists to aid in state tax enforcement and that such ordinances do not violate the federal constitutional right of free speech. Bates v. City of Little Rock.[5]"

Bates and Williams involved ordinances of the cities of Little Rock and North Little Rock, respectively, which required organizations claiming immunity from municipal occupation taxes on the ground of the charitable nature of the organizations to furnish upon request certain information essentially similar to that required by Act 12. The appellant, Bates, was the president of the Little Rock Branch of the NAACP, and the appellant, Williams, held a similar position with the organization in North Little Rock. Both refused upon request to furnish their membership lists, although they did supply other pertinent information. On account of their refusal, they were prosecuted, convicted and fined $25 each.

In upholding their convictions the Supreme Court of Arkansas said, among other things:

"The primary purpose of each of the ordinances here involved is to obtain revenue for the Cities, and the obtaining of the membership list

and the listing of contributors is merely to aid in determining the matter of tax status. The NAACP is not being required to furnish any information other than that which is required of all other organizations seeking immunity from the payment of an occupation tax. The record here shows that the information required by the ordinances involved was required of all organizations claiming tax exemption; and the information was furnished by all of the requested organizations except the NAACP.

\* \* \* \* \* \*

"The NAACP is not being required to furnish any information other than is furnished by all other organizations claiming immunity from taxation. Furnishing membership lists of non-profit organizations in Arkansas, as a basis of being determined a non-profit organization, has been the rule in Arkansas since 1875. \* \* \*

\* \* \* \* \* \*

" \* \* \* If NAACP wants tax immunity, it should comply with the ordinance. It cannot have immunity from taxation without complying with the ordinance. This is but an application of the old statement that one cannot both eat his cake and keep it." 319 S.W.2d at pages 41, 42 and 43.

This court sees nothing in the Bates decision which sheds any light on how the Supreme Court of Arkansas will construe Act 12 as applied to the NAACP. The ordinances involved in that case applied to all organizations seeking tax exempt status; the NAACP was such an organization, and the ordinances were clearly applicable to it. In the instant case, on the other hand, it is certainly not obvious that the activities of the plaintiff come within the purview of the statute.

5. Bates v. City of Little Rock (Williams v. City of North Little Rock), Ark., 319 S.W.2d 37, certiorari granted 359 U.S. 988, 79 S.Ct. 1118, 3 L.Ed.2d 977.

Moreover, regardless of what may be thought as to the bearing of Bates upon the problem in hand, that decision is not res judicata here, and the Supreme Court of Arkansas is certainly free to hold that the stated aims and purposes of the plaintiff do not amount to a prohibited interference with Arkansas' legitimate control and management of her public school system.

Turning now to Act 13, Section 2 thereof provides that:

"If the Attorney General of the State of Arkansas should ascertain or have reason to believe that any organization or association, whether incorporated or not, has evaded, attempted to evade, or has defrauded the State of Arkansas of taxes due it under the laws of the State of Arkansas, he may, upon procurement of an order ex parte from any Chancery Court authorizing him and the duly elected sheriff or his deputy to visit the office or headquarters of any organization or association, and there secure copies, photostatic or otherwise, reproduce, photograph, or otherwise record any and all evidence found evidencing the fact that such organizations or associations has evaded or defrauded the State of Arkansas of the payment of the legal amount of taxes due and payable by such organization or association, or has otherwise violated any of the laws of the State of Arkansas."

Section 3 of the Act then goes on to provide that any person, firm or corporation refusing the Attorney General access to its files, records, correspondence or other data, may be summarily taken before the Court issuing the visitation order and there held in contempt of the Court's order. And Section 4 provides that any person "violating the provisions of Section 2" shall be guilty of a "misdemeanor of said refusal, and upon conviction thereof may be fined in a sum of not less than fifty dollars * * * nor more than five hundred dollars * * * plus imprisonment not to exceed a term of six months, or both

fine and imprisonment". Section 5 provides that evidence procured pursuant to the provisions of the Act shall be admissible in all courts. Sections 6 and 7 need not be abstracted here. Section 8 is the emergency clause wherein it is found and declared by the Legislature "that certain organizations and associations have been hindering the orderly administration of the public schools and institutions of higher learning and have defrauded the State of Arkansas of the payment of certain taxes, and the passage of this act will alleviate such conditions".

Plaintiff says in its brief that Act 13 does not "meet even the rudimentary requirements of due process * * *" and that: "Upon a mere allegation that he has reason to believe that an organization is violating state tax laws, the Attorney General may procure an *ex parte* order authorizing him to search the offices of the organization for evidence that *any* law has been violated. The accused organization is then faced with the alternatives of surrendering its property or being summarily held in contempt without ever having had notice or the opportunity to be heard."

It is possible, of course, that the Arkansas courts might construe and apply the statute so as to produce the results apprehended by the plaintiff; but, it is also possible that they may give the enactment a more limited construction and may surround its application with such procedural safeguards as to protect the legitimate rights and interests of the plaintiff, its affiliates and members, who can expect no more. After all, there is nothing inherently unconstitutional in the use of visitorial process to enforce the law or to secure evidence of violations thereof. Thus in Hammond Packing Co. v. State of Arkansas, 212 U.S. 322, 347–348, 29 S.Ct. 370, 378, 53 L.Ed. 530, the court said:

"It is insisted that the order to produce was so general and indefinite as to amount to an unreasonable search and seizure, and consequently was wanting in due process of law. But conceding, for the sake of argu-

ment only and not so deciding, that the due process clause of the 14th Amendment embraces in its generic terms a prohibition against unreasonable searches and seizures, a question hitherto reserved, under circumstances analogous to those here present, in Consolidated Rendering Co. v. [State of] Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327, we think the ruling made in that case establishes the unsoundness of the contention. We say this because it was in that case determined, in view of the visitorial powers of a State over corporations doing business within its borders, and the right of the state to know whether the business of a corporation was being carried on in a lawful manner, that it was competent for the state to compel the production of the books and papers of the corporation in an investigation to ascertain whether the laws of the state had been complied with. And of course such power embraces the authority to require the giving of testimony by the officers, agents, and other employees of the corporation for like or analogous purposes."

While the statute does not use the term "search warrant", it is open to the Supreme Court of Arkansas to say that the "order of visitation" provided for by the Act is, in effect, a special type of search warrant; and, if it so holds, then the procedural requirements of Arkansas' conventional constitutional prohibition against unreasonable searches and seizures must be met prior to the issuance of such an order. The Arkansas Constitution, Article 2, Section 15, provides that a search warrant may not be issued "except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized." And, in Ex parte Levy, 204 Ark. 657, 163 S.W.2d 529, it was held that the issuance of a search warrant is a judicial act to be performed only by judicial officers, and by them only upon the conditions and under

the circumstances stated in the provision of the Arkansas constitution above quoted.

That the "order of visitation" is to be obtained ex parte, as search warrants usually are, does not mean necessarily that it must be issued by the Chancellor as a matter of course. The State courts may well hold that before such an order may issue, the Attorney General must make a satisfactory showing that there is probable cause to believe that the plaintiff has in fact violated the State's tax laws or other valid enactment of the State. It may also be held that the Chancellor has some power to limit the scope of the visitation or to enter appropriate protective orders.

As to the contempt provisions of the statute, this Court cannot say authoritatively whether the Arkansas courts will view a refusal to submit to a visitation order as a civil contempt, or as a criminal contempt committed outside the presence of the court, or whether in view of the use of word "summarily" in Section 3 they will treat such a refusal as a criminal contempt committed in the court's presence. It should be noted, however, that the word "summarily" modifies the phrase "taken before the Court" and not the phrase "held in contempt of the Court's order". If the Supreme Court of Arkansas characterizes the contempt as "civil", or as a criminal contempt committed outside the presence of the court, then clearly the alleged contemnor is entitled under Arkansas procedure to advance notice and hearing. See Ark. Stats. § 34–903; CarlLee v. State, 102 Ark. 122, 143 S.W. 909; and Ex parte Coulter, 160 Ark. 550, 255 S.W. 15.

It must be kept in mind with regard to both statutes that there is no presumption that the courts of Arkansas will not do their full constitutional duty, or that they will act in an arbitrary or capricious manner. Indeed, the presumption is the other way. See Harrison v. N.A.A.C.P., supra, 360 U.S. at page 178, 79 S.Ct. at page 1031. That the plaintiff has a plain and adequate remedy in the State equity courts is made clear by the

decision of the Supreme Court of Arkansas in Smith v. Faubus, Ark., 327 S.W.2d 562, 567, decided on September 14 of the current year, two days after the reargument in this case. That decision also indicates that said court will construe strictly the statutes in question, both of which contain penal provisions.[6]

The plaintiff does not appear to be in imminent danger of having either Act enforced against it before it can secure State adjudication. The Attorney General has indicated in the course of both arguments that he has no intention of moving precipitantly under Act 13, and although the statutes were enacted in September, 1958, no county judge has yet moved against the plaintiff under Act 12. Should any action be initiated against the plaintiff before it can secure a State court adjudication, this Court has jurisdiction to grant appropriate relief, since jurisdiction is being retained. See in this connection, Harrison v. N.A.A.C.P., supra, 360 U.S. at page 179, 79 S.Ct. at page 1031. It goes without saying, of course, that the plaintiff cannot indefinitely avoid both a State interpretation of the statutes and an attempted enforcement thereof by failing to seek affirmative relief in the State courts.

It Is Therefore, Considered, Ordered and Adjudged that the Court adheres to its original order granting the motions to stay, and retains jurisdiction of this cause until efforts by the plaintiff to obtain an adjudication in the State courts shall have been exhausted.

6. The Smith case involved the validity of Acts 83 and 85 of the 1957 Arkansas General Assembly, which statutes had been attacked in the Arkansas courts by a group of Negro ministers after a three-judge federal court convened in this district declined to pass on said statutes in advance of State court adjudication. Act 83 is the statute creating the State Sovereignty Commission, and Act 85 required registration by persons who might solicit funds to be used in accomplishing, among other things, the passage of Congressional legislation "designed to limit or circumscribe in any manner the operation and control of school districts in Arkansas by the duly elected and qualified officers, directors, agents and employees of such school districts."

The latter Act was stricken down in its entirety as infringing upon a field that had already been pre-empted by the Congress. With regard to the State Sovereignty Commission, the Court held that the section of Act 83 giving broad visitorial powers to the Commission was invalid as a violation of Article 2, Section 15 of the Arkansas constitution, which provision has heretofore been mentioned. In upholding other sections, the Court said:

"The Sovereignty Commission has ample power under § 12 of the Act No. 83 to initiate investigations and summon witnesses. It can apply to the Court for *subpoena duces tecum;* and, under § 13 of the Act, the Commission may apply to a court to enforce its desired process. As we understand §§ 12 and 13, the proper court may issue process and hear contempt matters on request of the Sovereignty Commission. As so understood, full judicial protection is accorded; and such is the orderly and constitutional manner of procedure."