LEVY, EX PARTE.

LEVY *v.* ALBRIGHT.

4-6894                                        163 S. W. 2d 529

Opinion delivered July 6, 1942.

658

*John M. Lofton, Jr.,* and *Owens, Ehrman & Mc-Haney,* for petitioner.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for respondent.

SMITH, J.   The question here presented for decision is whether a judge of this court has the jurisdiction and power to issue a search and seizure warrant. Section 3327, Pope's Digest, attempts to confer this power, so that the ultimate question for decision is whether this legislation, as related to judges of the Supreme Court, is valid and constitutional. This section, § 3327, reads as follows: "Search warrants. It is hereby made and declared to be the duty and required of the judges of the Supreme Court, the judges of the circuit courts and of the justices of the peace, on information given or on their own knowledge, or where they have reasonable ground to suspect, that they issue their warrant to some peace officer, directing in such warrant a search for such gaming tables or devices hereinbefore mentioned or referred to, and directing that, on finding any such, they shall be publicly burned by the officer executing the warrant."

It is said that the act has twice been held to be constitutional, first in the case of *Garland Novelty Co. v. State,* 71 Ark. 138, 71 S. W. 257, and later in the case of

*Furth* v. *State,* 72 Ark. 161, 78 S. W. 759. These cases did hold that the legislation is not void, but neither held that it is entirely valid.

In each of those cases a circuit judge had issued a seizure warrant, directing the sheriff of the county to whom it was issued to seize certain gambling instrumentalities. The jurisdiction of the circuit judge was not and could not be successfully questioned. A hearing was accorded in each of those cases to the owner of the seized property as to the nature and use of the instrumentalities seized, and the action of the circuit judge in holding that the paraphernalia were gambling devices was affirmed in each case on the appeal to this court.

The question was not involved in either of those cases whether a judge of the Supreme Court had the jurisdiction and power to issue such a warrant, and that question was, therefore, neither considered nor decided. It was decided in both of those cases that the act was constitutional in so far as it conferred upon circuit judges the power to issue these warrants.

An act may be unconstitutional in part and yet be valid as to the remainder. Many cases so hold, and the following quotation from Cooley's Constitutional Limitations appearing in the case of *Oliver* v. *Southern Trust Co.,* 138 Ark. 381, 212 S. W. 77, has been many times approved by this court: " '. . . Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be' contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the un-

660

constitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated, within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.' Cooley's Constitutional Limitations, 6th ed., p. 210. This rule has been followed in innumerable cases in the various courts, and by this court in the following cases: *L. R. & Ft. Smith Rd. Co.* v. *Worthen,* 46 Ark. 312; *State* v. *Marsh,* 37 Ark. 356; *State* v. *Deschamp,* 53 Ark. 490, 14 S. W. 653; *Cribbs* v. *Benedict,* 64 Ark. 555, 44 S. W. 707; *Wells Fargo & Co., Express* v. *Crawford County,* 63 Ark. 576, 40 S. W. 710, 37 L. R. A. 371.

We think it obvious that the General Assembly would have enacted this law even though judges of the Supreme Court had not been included, as the General Assembly was imposing a duty upon courts engaged in enforcing the criminal laws of the state, and it is apparent that duty would have been imposed upon courts having jurisdiction to enforce the criminal laws, although that duty was also imposed upon a court which could not exercise that jurisdiction. *Conway County Bridge District* v. *Williams,* 189 Ark. 929, 75 S. W. 2d 814; *State* v. *Hurlock,* 185 Ark. 807, 49 S. W. 2d 611.

Article 7 of the Constitution of 1874 deals with the judicial department of the state, and § 4 of that article

reads as follows: "The Supreme Court, except in cases otherwise provided by this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, under such restrictions as may from time to time be prescribed by law. It shall have a general superintending control over all inferior courts of law and equity; and in aid of its appellate and supervisory jurisdiction, it shall have power to issue writs of error and supersedeas, certiorari, *habeas corpus,* prohibition, mandamus and *quo warranto,* and other remedial writs, and to hear and determine the same. Its judges shall be conservators of the peace throughout the state, and shall severally have power to issue any of the aforesaid writs."

It was said in the case of Batesville & Brinkley Railroad Co., *Ex parte,* 39 Ark. 82, that the phrase "appellate jurisdiction," as used in this section of the Constitution means the review by a superior court of the final judgment, order, or decree of an inferior court.

This section of the Constitution confers upon the Supreme Court a general superintending control over all inferior courts of law and equity, and in aid of this appellate and supervisory jurisdiction power is given to issue the writs there named; but the power to issue these writs is in aid of the appellate and supervisory jurisdiction of the court.

The last sentence of this section provides that the judges of the Supreme Court shall be conservators of the peace throughout the state, and shall severally have power to issue any of the aforesaid writs.

Now, one judge, as well as all the judges, may issue the writs above named, but whether issued by a judge acting severally or by all the judges acting collectively, they may only be issued in aid of the court's appellate and supervisory jurisdiction. These writs have meanings well known to the profession, and their respective functions have been defined in innumerable cases.

Certain it is that they have no relation to search and seizure warrants, and if any power has been conferred upon a judge of the Supreme Court to issue a search and

seizure warrant, that power must be found in some other provision of the Constitution.

Now, this section quoted above does make the judges of the Supreme Court conservators of the peace throughout the state. But who and what is a conservator of the peace? Many definitions of the term, "conservator of the peace," are to be found under that title in Words and Phrases, and the one most frequently given is that term, "conservator of the peace," is synonymous with the term, "peace officer." The origin of this office and the functions of that official are there defined as follows: " 'Conservator of the peace' was the name of a common-law officer, which, prior to St. 1 Ed. iii, c. 16, authorizing the appointment of justices of the peace, were elected by the people. They were common-law officers, and their duties as such were to prevent and arrest for breaches of the peace in their presence, but not to arraign and try the offender. *Smith* v. *Abbott,* 17 N. J. L. (2 Har.) 358, In re *Barker,* 56 Vt. 14." Vol. 8, Words and Phrases (Permanent Edition), p. 645.

Judges of the Supreme Court are not the only conservators of the peace or peace officers. Sheriffs, constables and policemen are also conservators of the peace or peace officers. These latter have powers which are local, while those of a judge of the Supreme Court in this respect are state-wide.

There appears but little, if any, basis for the contention that a peace officer may issue search and seizure warrants. There is no authority in the law for a peace officer to issue such a warrant, the issuance of which involves a judicial function. Section 15 of art. 2 of the Constitution definitely settles that question. It reads as follows: "The right of the people of this state to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

It was held in *Bryan* v. *State,* 99 Ark. 163, 137 S. W. 561, Ann. Cas. 1913A, 908, that a search warrant was a

judicial writ, and that resistance to it constituted a contempt of the court which issued it.

Only judicial officers may issue search and seizure warrants, and these officials may do so only upon the conditions and under the circumstances stated in the provision of the Constitution above quoted. Certainly, a mere peace officer has no such power.

At § 155 of Cornelius on Search and Seizure, 2d ed., p. 357, it is said: "A clerk of a court has no jurisdiction to issue a search warrant, neither has a prohibition agent, and since the issuance of a search warrant is a judicial act, it naturally follows that no other ministerial officer has jurisdiction to issue such a warrant, . . ."

Now, as has been said, § 3327, Pope's Digest, does attempt to confer the power to issue these warrants upon the judges of the Supreme Court. And if that power is exercised by a judge of the Supreme Court, he acts in his official judicial capacity, because he is discharging a duty imposed by the act upon the judges of the Supreme Court, and in doing so he exercises no appellate or supervisory jurisdiction, and issues no writ in aid of that jurisdiction. The issuance of such a writ is an act of original jurisdiction, a jurisdiction which has not been conferred by the Constitution upon this court, but which has been expressly denied by that instrument, as will be more fully shown.

The issuance of this writ and the seizure of the property described in it is not the end of the proceeding. It is rather the means by which the proceeding is begun. The writ is issued upon an *ex parte* affidavit, and is not made conclusive of the character of the property to be seized. The act does not undertake to make it so. If it did, it would be unconstitutional for that reason as violative of § 21, art. 2, of the constitution, which article is frequently referred to as the "Bill of Rights."

Justice RIDDICK defines the proper practice under this act in the Garland Novelty Company, case, *supra*. He there said: "The object of the warrant was not to empower the officer to search, but to empower him to

seize the slot machine (the gambling device there in question), and to summon the owners thereof to appear and show cause why it should not be condemned and destroyed."

The learned justice in the same opinion said: "The statute does not authorize the seizure and destruction of tables or other useful furniture simply because they may be found in a gambling house, or because they may be used in playing cards or other games upon which money is bet, but it permits the destruction of those tables and devices only that are made and kept solely for the purpose of carrying on a business which the law forbids."

The owner of the device seized has the right, therefore, to be heard upon the question whether the property seized is a gambling device. The property here involved was seized at the owner's place of business in the city of North Little Rock, and he insists that this property, called a ticker telegraph machine, is not a gambling device. There is, therefore, here, and might be in any case, a question of fact as to whether the property seized was a gambling device. The determination of that question of fact involves the exercise of an act of original jurisdiction which judges of the Supreme Court do not possess. Had the warrant in question here been issued by any one of the circuit judges presiding in Pulaski county, or by any one of the many justices of the peace holding office in that county, these officers, or any of them issuing the writ, could determine this question of fact by exercising the original jurisdiction given them by the constitution.

In the very early history of this state, and in the first volume of the decisions of this court, at page 279, in the case styled *The State* v. *Chester Ashley, et al.,* the court had occasion to consider distribution of the judicial power among the courts of the state. The litigants were among the most prominent citizens of the state, and the litigation involved the control of the principal branch of the Real Estate Bank of this state, a question of wide public interest and then regarded as of paramount importance, and the opinion reflects a decision upon greatest consideration.

Our first constitution, that of 1836, was then in force, and art. VI thereof related to the "Judicial Department." Sections 2 and 4 of art. VII of our present constitution were taken from § 2 of art. VI of the Constitution of 1836, § 2 of which defined the jurisdiction of the Supreme Court in language substantially identical with § 4 of our present constitution, except that in enumerating the writs which the Supreme Court may issue in aid of its appellate and supervisory jurisdiction the present constitution names prohibition as a writ which may be issued which was not named in the Constitution of 1836, but this was, of course, a remedial writ which the 1836 constitution authorized. So, therefore, the jurisdiction of the Supreme Court under our present constitution is identical with that of the Constitution of 1836. It follows, therefore, that what was said of the jurisdiction of our courts in the Ashley case, *supra,* is as applicable to our present constitution as it would have been had our present constitution then been in effect. Both constitutions conferred the power upon the Supreme Court to issue "other remedial writs," and in defining that power the Supreme Court in the Ashley case, *supra,* said:

"We will now examine what jurisdiction or power this court can derive from the term, 'other remedial writs,' as used in the constitution. The terms here used are general, and their application is left indefinite. Did the convention intend thereby to authorize this court to issue every writ of a remedial nature known to the law, and to hear and determine the same? If they did, their declaration that this court 'shall have appellate jurisdiction only, except in cases otherwise directed by the constitution,' as well as their special grants of powers, to issue certain enumerated writs, each of which is of a remedial nature, is wholly unmeaning, if not positively absurd; and besides that, it would produce a direct conflict of authority between the several judicial tribunals, and involve them in the utmost confusion. It would destroy every vestige of harmony in the whole system, and virtually repeal every other grant of judicial power made by the constitution. It would draw to this forum original jurisdiction co-extensive with the state, of every

civil controversy; for it must be observed, that in respect to the sum or amount involved, there is no restriction whatever imposed by the constitution, in any case in which this court can exercise original jurisdiction; therefore, if it can, under any authority derived from this general grant, take original jurisdiction in any case, it may of all cases falling within the same general class. These consequences are clearly not within the object and intention of the convention, but in opposition to both. And it is a rule founded upon the dictates of common sense, admitted by all jurists, that in construing a constitution or fundamental law of government, no construction of a given power is to be allowed, which plainly defeats or impairs the avowed objects."

The able discussion, of which we have copied only a part, concludes with this statement of the law: "It therefore results from the view taken of this subject by the court, that the Supreme Court cannot, under any power conferred upon it by the constitution, exercise original jurisdiction in any case where the proceeding is, or must necessarily be of a criminal nature; its original jurisdiction being expressly limited and restrained by the constitution, to such matters of a civil nature as may be properly brought before the court, by some one of the writs expressly enumerated in the constitution; and the proceeding by information, in the nature of a *quo warranto,* being properly a criminal proceeding, this court cannot entertain original jurisdiction of it. And for this reason, the motion in this case must be denied and the rule refused."

In this connection, it may be called to mind that § 11 of art. VII of our constitution provides that "The circuit court shall have jurisdiction in all civil and criminal cases the exclusive jurisdiction of which may not be vested in some other court provided for by this constitution."

The distribution of jurisdiction among the courts of the state, and especially the jurisdiction of the Supreme Court, was again considered in the case of *Isaac N. Jones, ex parte,* 2 Ark. 93, where the Ashley case was quoted

from more extensively than we have done here. The court again considered the meaning of the constitution in conferring jurisdiction to issue "other remedial writs," and the limitations upon that power. After quoting article 4 (6), § 2, it was there said: "The obligation to exercise a jurisdiction that is conferred, and to refrain from exercising it where it is denied, is of equal obligatory force. By an analysis of the powers conferred upon the Supreme Court, as prescribed by the constitution, it will be readily perceived that all its constitutional jurisdiction, as derivative from the grant of its creation, and nearly all of its powers, are strictly of an appellate character. The constitution first designed to make it what in truth it is—a court of error and of appeals, whose practice might be regulated and prescribed by legislative enactments; but whose constitutional existence, organization, and jurisdiction, could in no essential point or manner be changed or altered by the legislature. This proposition seems to our minds to be clearly deducible, not only from the particular clause of the constitution we are now considering, but from the general frame and nature of the government itself, as organized and established by the convention. Then, it clearly follows, from these plain and obvious principles, that the Supreme Court possesses no constitutional power and authority to issue any other writs than those expressly enumerated and embraced in the constitution, or such as are necessarily implied and contained in that enumeration."

Among other cases consonant with the Ashley and Jones cases, *supra,* are the following: *Byrd* v. *Brown,* 5 Ark. 709; *Allis Ex Parte,* 12 Ark. 101; *Marr Ex Parte,* 12 Ark. 84; *Carr* v. *State,* 93 Ark. 585, 122 S. W. 631; *Fort Smith Light & Traction Co.* v. *Bourland,* 160 Ark. 1, 254 S. W. 481.

It is easily conceivable that in any case where the writ authorized by § 3327, Pope's Digest, had been served the question might arise whether the articles seized were gaming devices. Indeed, that question did arise in both the Garland Novelty Company and the Furth cases, and the finding of fact was made by the circuit judge issuing the writs that the articles seized were gaming devices.

The same question is raised here, and its decision involves the exercise of original jurisdiction, which any one of the circuit judges of Pulaski county, or any one of the justices of the peace who may issue such a writ, could determine. They have that original jurisdiction, but, in our opinion, this court does not have it.

It is, therefore, ordered that the writ of seizure heretofore issued be quashed.

GRIFFIN SMITH, C. J., and GREENHAW, J., dissent.

McHANEY, J., not participating.

GRIFFIN SMITH, C. J. (Dissenting). Section 3327 of Pope's Digest authorizes issuance of search warrants. If formal information is given a judge of the supreme court, a circuit judge, or a justice of the peace that a gambling house is being conducted, it is the *"duty,"* and it is *"required"* of such judge or justice that he direct a warrant to some peace officer commanding a search and seizure, and ordering that the unlawful devices be publicly burned by the officer executing the warrant.

Constitutionality of the statute was upheld in *Furth* v. *State,* 72 Ark. 161, 78 S. W. 759. In that case, upon affidavit before the judge of the Sixth judicial circuit stating that certain gambling devices were kept at 109 South Main street, Little Rock, the sheriff seized two tables.

It was contended (a) that the tables were not gambling paraphernalia, and (b) that incompetent evidence had been admitted at a hearing conducted in response to citation commanding the defendant to appear and show cause why the fruits of seizure should not be destroyed.

The second paragraph of the opinion is: "The appellant contends that the Act providing for this procedure is void, because §§ 1618 and 1619 of the statute are unconstitutional, because they are uncertain and ambiguous. We do not consider this objection sound." Section 1618 of Sandels & Hill's Digest was then copied in full, with the comment: "Though the meaning of this

section might have been made plainer by particularity in the use of language, it is easily understood by anyone who does not want to misunderstand.'' It was then said: ''The objection that the Act in question does not provide for a jury is a serious one. But this is a proceeding *in rem* of a civil nature. It is a summary proceeding in the exercise of the police power of the state, under a statute passed to suppress the nuisance of gambling. Gambling was a nuisance at common law. It is only in cases where a jury could be demanded as a matter of right at common law that the refusal of a jury under our constitution is ground for reversal.

''The contention is made here *that the legislature has no right or power to enact this statute.* We understand that it is competent for the legislature to provide by statute for the suppression of nuisances by a summary proceeding, and to authorize the destruction of gambling devices the use of which constitutes a nuisance. The principle is settled in case of the *Garland Novelty Co.* v. *State,* 71 Ark. 138, 71 S. W. 257, which case counsel for appellant asked this court to reconsider and modify, so as to confine its ruling to the cases where not only the devices seized are nuisances *per se,* but where the facts are confessedly that such property is used for gambling purposes only, and cannot be used for any other. This we cannot do. This case stands on its own facts, and announces correct principles of law.''

After copying the section of the statute in question, including, of course, that portion conferring upon judges of the supreme court the right to issue search warrants, *requiring* them to do so, and imposing it as a *duty,* attention was called to the contention that the legislature was without power *to enact this statute,* the court very emphatically held it was competent for the legislature to provide for the suppression of gambling, and by every intendment short of saying ''this statute is constitutional,'' held it to be valid.

It is true that in the Furth case the warrant had been issued by a circuit judge. But, quoting again from the opinion, there is this declaration: ''To maintain the constitutionality *of the statute under consideration,* the doc-

trine of what is known as the Fish Net Case, *Lawton* v. *Steele*, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385, is justly invoked.''

In the appeal involving the Garland Novelty Company Mr. Justice RIDDICK was very careful to say it was necessary for warrants to be supported by oath or affirmation showing probable cause for belief that the thing to be searched for was on the premises or in the building. While the statute by its terms conferred upon judges authority to issue warrants on belief, it was shown that the Act was passed before 1874, when the present constitution was adopted.

The exact question involved in petitioner's complaint has not heretofore been raised, but the Act as a whole (except as circumscribed by Mr. Justice RIDDICK) has been held valid.

Why, then, must society be controlled by judicial gossamer, the effect of which is to satisfy, pacify, and fortify commercial gambling?, although, of course, this radial consequence is not intended.

Informed citizens are not strangers to the interests of the lawless minority in Hot Springs, nor are they insensible to the practice of gamblers elsewhere who course the subways of crime.

Sharp practices, confidence games, robbery, theft—these and other kindred pursuits are propagated with unrelenting zeal by that galaxy of the ''shifty'' who subsist by what is mistakenly referred to as their wits, but which in fact is wantonness aggravated by acute decay. It would be futile—an endless task—to enumerate the efforts good people have continuously exerted to enforce laws enacted to suppress the practices engaged in by overlords of corruption.

Editors have inveighed against conduct of the recalcitrant who prostitute alike the mind of young and old. Ministers, by sermons, have begged for public support in their struggle against that character of degredation which attends either legal or illegal gambling. Layworkers in churches, whose sincerity rises higher than lip-service and an occasional contribution from surplus

funds, have sought by example and entreaty to place human conduct upon a plane removed from dens where professional sportsmen ply their trade. There has always been willingness by the few to challenge procurers of protection who find immunity in public apathy. The lawless believe that technicalities and judicial "breaks" will wrap them in the folds of a constitution they have neither the capacity to understand nor the inclination to examine.

By a process of deduction which textwriters of law would perhaps term reasoning, the majority reaches the conclusion that an Act making it the duty of a supreme court judge to issue search warrants is unconstitutional because, says the opinion, art. 7, § 4 restricts the tribunal to appellate jurisdiction except in cases otherwise provided.

No one contends that the *supreme court* has issued any writ. It could not do so if the Act in question had so provided; because, in that event, a review involving rights of those from whom equipment was taken would be before the authority that sanctioned the warrant. It is different when a single judge has responded to mandatory provisions of § 3327 of Pope's Digest. This court should say that replevin would lie for the purpose of determining whether the things taken were, in fact, gambling paraphernalia.

It is somewhat anomalous for the court to say it may, as an original proposition, assume jurisdiction to determine a constitutional question involving the right of a judge to issue search warrants, but it may not designate procedure for review.

As the judge who issued the warrant now questioned, and others not in issue; as one who under express authority of a statute imposing such duty responded to affidavits regularly presented (in consequence of which nearly a score of gambling houses were raided in Hot Springs in 1937 and fifty thousand dollars' worth of equipment at Belvedere, Southern Club, and other notorious halls was appropriated, and destroyed after sufficient time had been allowed to permit operators to question the procedure) I concede that a *strict* construc-

tion such as the court has placed on the constitution would produce the results Henry Levy has been able to procure. But I contend that art. 7, § 4 should receive the *liberal* interpretation of which it is susceptible, thereby reserving to the authority designated by the general assembly the right to interfere when there is justification.