Becky Coburn SEAGRAVE *v.* Jeffrey PRICE,
Jerry and Darlene Price, *Intervenors*;
State of Arkansas, *Intervenor*

01-1370 79 S.W.3d 339

Supreme Court of Arkansas
Opinion delivered June 27, 2002
[Petition for rehearing denied September 5, 2002.]

*Robert A. Newcomb*, for appellant.

*Keith Blackman*, for appellee and intervenors Jerry and Darlene Price.

*Mark Pryor*, Att'y Gen., by: *Melanie Winslow*, Ass't Att'y Gen., for intervenor State of Arkansas.

TOM GLAZE, Justice. This case again requires this court to examine the constitutionality of the Grandparental Visitation Rights Act, Ark. Code Ann. § 9-13-103 (Repl. 2002). We recently held that the statute was unconstitutional as applied in *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), basing our decision primarily on the United State Supreme Court's plurality decision in *Troxel v. Granville*, 530 U.S. 57 (2000).

Becky Coburn Price and Jeff Price have a daughter, Ashley, who was born on May 6, 1996; the couple divorced on March 11, 1997, and Jeff was awarded visitation. Jeff continued to have visitation with Ashley until April of 2000. At that time, Becky began to suspect that Jeff was abusing the child during his visits with her, when Ashley told her mother that she played what she called the "squishy game" with her father. This "game" apparently involved Ashley's sitting on Jeff's lap in the bathtub and shaking her bottom back and forth. Becky filed a complaint with the Family Protec-

tion Unit of the Arkansas State Police, and in May of 2000, the FPU concluded that Jeff was guilty of sexual abuse and was registered with the Central Registry established pursuant to the Arkansas Child Maltreatment Act, *see* Ark. Code Ann. §§ 12-12-501 and -505 (Supp. 2001). Jeff did not appeal that decision.

On June 1, 2000, Becky filed a petition in Craighead County Chancery Court to terminate Jeff's visitation rights. Jeff filed a response on June 16, 2000, denying the allegations in Becky's petition; he also filed a counterclaim in which he argued that the chancery court should change custody of Ashley from Becky to him, because Becky had failed and refused to allow him visitation as ordered by the court. In addition to Jeff's response and counter-claim, Jeff's parents, Jerry and Darlene Price, filed a petition for grandparents' rights pursuant to Ark. Code Ann. § 9-13-103 (Supp. 2001), in which they alleged that they desired to visit their granddaughter for substantial periods of time, and had been unable to do so due to Becky's actions. In response to the Prices' petition, Becky filed a response in which she denied their allegations and additionally argued that § 9-13-103 was unconstitutional, in that the statute violated her equal protection and due process rights.

In an order dated November 13, 2000, the chancery court found that § 9-13-103 was constitutional, stating that the statute did not violate the Due Process Clause as impinging upon a fundamental constitutional right of a custodial parent, nor did the statute violate the equal protection clause. In a separate order filed on June 26, 2001, the trial court denied Becky's petition to cease and restrict visitation, and granted the Prices' petition for grandparent visitation. The court also ordered that Jeff would have visitation with Ashley only in the presence of either Jerry Price or Darlene Price, finding specifically that either Jerry or Darlene Price had to be physically present whenever Jeff had visitation with Ashley. The order further recited that if the court ever found that Jerry or Darlene Price had left Ashley alone with Jeff, all visitation between the three Prices and Ashley would cease.

From this order, Becky brings the present appeal, in which she argues that § 9-13-103 is facially unconstitutional under the

Due Process and Equal Protection Clauses, and that the Act was unconstitutional as applied to her; alternatively, she asserts that the trial court failed to comply with the Act in awarding the Prices visitation.

The Arkansas Grandparental Visitation Rights Act, Ark. Code Ann. § 9-13-103 (Repl. 2002), provides in its entirety as follows:

> (a)(1) Upon petition by a person properly before it, a chancery court of this *state may grant grandparents* and great-grandparents reasonable visitation rights with respect to their grandchild or grandchildren or great-grandchild or great-grandchildren at any time *if:*
>
> (A) *The marital relationship between the parents of the child has been severed by* death, *divorce,* or legal separation; or
>
> (B) *The child is in the custody or under the guardianship of a person other than one (1) or both of his natural or adoptive parents; or*
>
> (C) *The child is illegitimate, and the person is a maternal grandparent of the illegitimate child;* or
>
> (D) *The child is illegitimate, and the person is a paternal grandparent of the illegitimate child, and paternity has been established by a court of competent jurisdiction.*
>
> (2) The visitation rights may only be granted when the court determines that such an order would be in the best interest and welfare of the minor.
>
> (3)(A) An order denying visitation rights to grandparents and great-grandparents shall be in writing and shall state the reasons for denial.
>
> (B) An order denying visitation rights is a final order for purposes of appeal.
>
> (b) If the court denies the petition requesting grandparent visitation rights and determines that the petition for grandparent visitation rights is not well-founded, was filed with malicious intent or purpose, or is not in the best interest and welfare of the child, the court may, upon motion of the respondent, order the petitioner to pay reasonable attorney's fees and court costs to the attorney of the respondent, after taking into consideration the financial ability of the petitioner and the circumstances involved.
>
> (c) The provisions *of subsections (a) and (b)* of this section *shall only be applicable in situations:*

(1) *In which there is a severed marital relationship between the parents* of the natural or adoptive children *by* either death, *divorce,* or legal separation; or

(2) *In which the child is in the custody or under the guardianship of a person other than one (1) or both of his natural or adoptive parents;* or

(3) If the child is illegitimate.

(Emphasis added.)

In *Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841 (2002), this court disagreed that the Act is unconstitutional on its face. While agreeing that there is a fundamental right to parent, *Linder,* 348 Ark. at 342, the court noted that the Supreme Court, in *Troxel v. Granville, supra,* held that the State of Washington's Grandparental Visitation Rights Act, Wash. Rev. Code Ann. § 26.10.160(3), was unconstitutional as applied, due in part to its "breathtakingly broad" scope that allowed "any person" to petition for visitation "at any time." *Id.* at 344. The Washington Act also failed to accord a fit parent's wishes any weight whatsoever and failed to recognize a fit parent's interest in deciding what is in a child's best interest. Justice O'Connor wrote that, so long as a parent "adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel,* 530 U.S. at 68-69 (quoted in *Linder,* 348 Ark. at 345).

In sum, the *Troxel* Court held that the Washington statute was unconstitutional as applied because the Due Process Clause "does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel,* 530 U.S. at 72-73. The Court did not, however, determine whether or not the Washington statute was facially invalid.

Our court pointed out in *Linder* that a statute is facially unconstitutional "if it can be shown that under *no* circumstances can the statute be constitutionally applied." *Linder,* 348 Ark. at 349 (emphasis in original). However, this court held that the Arkansas GPVA was not facially unconstitutional because the

statute "could be constitutionally applied in a narrow category of cases." In particular, the court noted that no fundamental liberty interest would be at stake in a case involving a child "in the custody or under the guardianship of a person other than one or both of his or her natural or adoptive parents." § 9-13-103(c)(2). Therefore, in the situation of, for example, a child in the custody of the State Division of Youth Services, "there would be no fundamental parental right at stake, and a trial court would be perfectly within its legal bounds to decide what is in the best interest of the child and apply the statute accordingly." *Linder* at 349. Therefore, we found that facial invalidation of the statute would be inappropriate. Because Becky offers no new arguments that would require a different outcome in this case, we decline to expand *Linder's* holding with respect to the Act's facial invalidity.

However, Becky raises an additional argument that the Act facially violates the Equal Protection Clause because it treats divorced parents differently than it does married parents. Because the statute only allows grandparents to petition for visitation when there has been a dissolution of the marital relationship by divorce, separation, or death, she asserts, the legislature has made an improper decision to treat parents differently on the basis of whether or not they are married. In sum, Becky maintains that, under a strict-scrutiny analysis, there is no compelling state interest in treating the class of nonmarried parents differently from married parents.

■ ■ However, in this equal protection challenge, the court must first look to see whether or not a suspect classification is involved; if there is not, then the court may apply a "rational basis" analysis to determine whether or not this classification violates the equal protection clause. The Equal Protection Clause permits classifications that have a rational basis and are reasonably related to a legitimate government purpose. *See Reed v. Glover*, 319 Ark. 16, 889 S.W.2d 729 (1994). In *Reed*, this court held that the GPVA's distinction between grandparents of legitimate children and grandparents of illegitimate children did not violate the Equal Protection Clause, because it could not conclude that Ark. Code Ann. § 9-13-103(a) was "completely devoid of a legitimate purpose. . . . [W]e can understand well how the General Assem-

bly might have wished to leave such domestic matters out of the arena of litigation unless the child of the grandparent died or the need for it had arisen in a related but separate context such as divorce or paternity proceedings." *Id.* at 22.

Similarly, in *McFarland v. McFarland*, 318 Ark. 446, 885 S.W.2d 897 (1994), the court held that there was a rational basis for a statute that treated divorced parents differently than married parents in the context of a noncustodial parent's obligation to pay child support beyond a child's majority, when that child remained in school. The statute was designed to meet a specific and limited problem, one which the legislature could reasonably find exists only when a home is split by divorce. *McFarland*, 318 Ark. at 451 (quoting from *In re Marriage of Vbran*, 293 N.W.2d198 (Iowa 1980)). Because the differences in the circumstances between married and divorced parents established the necessity to discriminate between the classes, the statute at issue would not be found unconstitutional. For these reasons, we do not find that the GPVA unconstitutionally discriminates between married and divorced parents.

For her second point on appeal, Becky argues that the statute was unconstitutionally applied to her, because the trial court did not give any favorable presumption to her decision to deny visitation to the Prices. This is the basis on which the GPVA was found to be unconstitutional as applied in *Linder*. The *Linder* court addressed the question of "whether th[e] State has a compelling interest in judicially interfering with [the parent's] fundamental parenting rights," and "immediately discern[ed] a major deficiency in" the Arkansas GPVA in light of *Troxel*. *Linder*, 348 Ark. at 350. This court in *Linder* stated as follows:

> Rather than giving the parent's decision presumptive or special weight in deciding whether grandparental visitation is in the best interest of the child, as *Troxel* requires, the GPVA makes no provision for that but leaves the decision solely to the discretion of the trial court. Ark. Code Ann. § 9-13-103(a)(2) (Repl. 2002). Furthermore, when denying grandparental visitation, the GPVA requires that the trial court state the reasons for the denial in writing. Ark. Code Ann. § 9-13-103(a)(3)(A) (Repl. 2002). No concomitant requirement that the reasons be stated in writing is

required when a trial court grants grandparental visitation. The net result is that the trial court may grant grandparental visitation without the burden of stating its reasons, but denial by the trial court requires justification and implicitly places the burden of proof on the parent. By this requirement, the General Assembly has incorporated a procedural preference for granting such rights as opposed to denying them. This preference is directly at odds with the presumptive effect given to the parent's wishes under *Troxel* and, in effect, shifts the burden of proof to the parent.

*Id.* at 350.

■ In *Linder*, the court noted that the trial judge had found Lea Ann Linder to be a fit parent in every respect, except for her decision to prevent her child's grandparents from having visitation rights. *Id.* at 351. The court declined to hold that unfitness to decide visitation matters objectively equates to unfitness to parent sufficient to warrant state intrusion on the parent's fundamental right. "Were we to decide otherwise, any custodial parent refusing visitation would be subject to a trial court's nonparental visitation order on grounds that the parent was unfit to decide the matter." *Id.* at 352. Such a conclusion, we determined, would be at odds with the Supreme Court's decision in *Troxel*, where Justice O'Connor wrote that a decision about whether grandparental visitation would benefit a child "is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court *must* accord at least some special weight to the parent's own determination." *Troxel*, 530 U.S. at 70 (emphasis added).

■ · Here, the situation is perhaps even more egregious than the one in *Linder*. In that case, although the mother fled the jurisdiction with her child, not returning to Arkansas until she was located in Ohio and arrested on a contempt citation, the trial court nevertheless found her "to be a fit parent for all purposes save one: making the decision about [her child's] relationship with his paternal grandparents." *Linder*, 348 Ark. at 351. Here, in our *de novo* review of the record, no evidence is found to prove Becky was anything but a fit parent, but the same cannot be said regarding Jeff. Jeff was shown to have sexually abused Ashley, to be depressed, and to have entertained thoughts of suicide. Even

so, the trial court's findings from the bench and its order fail to reflect that it gave any weight to Becky's concerns other than the court's restriction of Ashley's visitation with Jeff to those times when Jerry and Darlene Price were present. In addition, the court, in its order and remarks from the bench, did not mention Becky's concern that the Prices smoked around Ashley despite the girl's asthma. In short, the trial court made no reference in its findings as to Becky's fitness as a parent, nor did it give her the presumption to which she was entitled in her opinions with respect to rearing her child. Instead, the court simply ordered that the Prices would be granted visitation concurrent with the visitation given to Jeff, concluding that "there's no reason to deny the father visitation subject to certain restrictions, . . . [and] the court sees no reason that [Jerry and Darlene Price] should not have the right to exercise visitation with their son." In other words, the trial court effectively shifted the grandparents' burden in their visitation request to Becky, who is a fit parent. Because the court failed to apply any presumption in favor of the custodial parent's decision regarding visitation, we hold that the GPVA was unconstitutionally applied in this case as it was in *Linder*.[1]

---

[1] We note that our holding finds nearly all of the Act unconstitutional, save one clause wherein grandparents may petition for visitation when no parent has custody. *See* § 9-13-103(c)(2). Of course, we are well aware of the rule of construction that, while an act may be unconstitutional in part and still be valid as to the remainder, this court has, on previous occasions, struck down the entire statute as unconstitutional when the remaining portion could not stand on its own. We stated this principle in *Levy v. Albright*, 204 Ark. 657, 163 S.W.2d 529 (1942), as follows:

> Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, *unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other. . . .* If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated, within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. *But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as*

██ Becky raises two additional arguments concerning the validity of the trial court's order granting visitation; she contends that the trial court erred in failing to make a written finding that visitation with the Prices would be in Ashley's best interest, and also that the court erred in not requiring visitation to be under the supervision of the Arkansas Department of Human Services. However, because we reverse and remand this case on the basis of the unconstitutionality of the statute, there is no need to reach the additional issues. Again, as we did in *Linder*, we urge the General Assembly to address this matter when it convenes in 2003. On remand, any visitation awarded to Jeff must be ordered to take place under the supervision of the Arkansas Department of Human Services, as was directed in the November 28, 2000, order entered by the trial court before the paternal grandparents were given the authority to supervise visitations.

HANNAH, J., concurs.

JIM HANNAH, Justice, concurring. I concur in the holding that the Grandparent Visitation Act is unconstitutional as applied in this case because the trial court failed to consider Becky's right to raise her child as set out in prior decisions of this court, and because the trial court failed to consider the presumption that a parent is acting in the best interest of his or her child in making decisions concerning the child as discussed in *Troxell v. Granville*, 530 U.S. 57 (2000). However, for the same reasons set out in my dissent to *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), I would argue that where a trial court takes these matters into consideration in deciding visitation, the statute may be con-

---

*conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.*

*Levy*, 204 Ark. at 659-60 (emphasis added). We realize that it might be argued that the entire GPVA is facially invalid, since the one constitutional subsection, § 9-13-103(c)(2), is "so connected together in meaning" with the remainder of the Act, and we could conclude that it must be struck down as well, because the purpose of the Act "is to accomplish a single object only." *Id*. at 660. However, this argument was not mentioned in *Linder* or in this appeal, so we do not address it now. Nonetheless, the General Assembly should be aware of this argument if it decides to offer remedial legislation to provide a GPVA that meets constitutional muster.

stitutional as applied. The majority states, "Because Becky offers no new arguments that would require a different outcome in this case, we decline to expand *Linder's* holding with respect to the Act's facial invalidity." However, then in a footnote, the majority provides that the holding in this case leaves but one clause of the statute constitutional, Ark. Code Ann. § 9-13-103(c)(2) (Repl. 2002), whereby grandparent visitation is granted when a child is not in the custody of either parent. It is apparent that the entire statute, excepting paragraph (c)(2), is now declared facially unconstitutional, or at least is being treated as being unconstitutional. The apparent main purposes behind the Grandparent Visitation Act are now frustrated, and it is up the Legislature to draft a new act.

I again reiterate my concern, as I stated in *Linder, supra,* that this case not be read too broadly. This case only involves grandparent visitation granted under the GPVA. In this case, Jerry and Darlene Price were also included in the order regarding visitation with Jeff Price, which is unaffected by this decision. Under that order, Jerry and Darlene are to supervise Jeff's visitation. If this were not so, then Jeff would be left with visitation without supervision. Jeff's visitation was not appealed and remains valid, subject to the conditions set out by the trial court, which include supervision by Jerry and Darlene. Finally, I must question why this case is being remanded. The Act is unconstitutional as applied, and the majority in a footnote states that the holding in this case leaves but one clause of the statute constitutional. Because Ashley is in the custody of a parent, the grandparents cannot be awarded visitation under the statute. Jeff's visitation has not been appealed, and he retains his visitation subject to supervision by his parents. There is nothing for the court to do upon remand.