Richard A. WEISS, Director, Arkansas Department of Finance and
Administration, State of Arkansas *v.* Ronald J. GEISBAUER

04-1324                                          215 S.W.3d 628

Supreme Court of Arkansas
Opinion delivered October 13, 2005

*Michael J. Wehrle*, and *William E. Keadle*, for appellant.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield*, for appellee.

BETTY C. DICKEY, Justice. This appeal arises from a constitutional challenge to Section 2 of Act 727 of the 1997 Acts of Arkansas (§ 2 of Act 727 of 1997), which is now codified at Ark. Code Ann. § 26-55-211. The circuit court held that § 2 of Act 727 of 1997, as written, is unconstitutional and concluded that the words "the Mississippi" should be struck from the statute and substituted with the words "a river." Appellant asserts that (1) the trial court erred by declaring the classification created by § 2 of Act 727 of 1997, between border cities located on the Mississippi River and border cities that are not, violates the Arkansas and United States Constitution; and (2) the trial court erred by declaring that the term "The Mississippi" should be struck from § 26-55-211 and that the term "a river" should be substituted in its place. We affirm in part and reverse in part.

Ark. Code Ann. § 26-55-205 levies a motor-fuel tax on the sale of motor fuels in Arkansas. Ark. Code Ann. § 26-55-210 provides that, in certain "border cities" and specified territory, the motor fuel tax shall not be greater than one cent per gallon above the rate of tax levied in the adjoining state ("border city exemption"). The General Assembly has, at various times, amended the legislation now codified at § 26-55-211 to provide that "border cities" will not include any territory annexed to those cities after a specified date. (Act 1498 of the 2001 Acts of Arkansas changed the date from February 1, 1973 to July 1, 2001.) Section 2 of Act 727 of 1997 added a provision to § 26-55-211 that makes the limitation date, July 1, 2001, irrelevant "in a city bordering a state line which is in the main channel of the Mississippi . . ." In other

words, a border city that borders the main channel of the Mississippi can annex territory and that territory will qualify for the border city exemption, regardless of the date of the annexation.

Appellee, Ronald J. Geisbauer, owns and operates a retail business, Ron's NSC, that sells motor fuels. Appellee's business is the tenant of a commercial tract of real property utilized for the distribution and sale of motor fuels, which was annexed to the City of Fort Smith after July 1, 2001. Because Fort Smith is not a city bordering a state line that is in the main channel of the Mississippi, the appellee's land does not qualify for the border city exemption. On June 11, 2003, on behalf of the appellee, appellee's landlord sought administrative relief from the director of the Arkansas Department of Finance and Administration, Richard A. Weiss. Appellee was denied relief and, on December 3, 2003, sought to obtain a declaratory judgment from the circuit court that the addition to § 26-55-211 by § 2 of Act 727 of 1997 was unconstitutional. It was appellee's contention that the classification between border cities located on the Mississippi and border cities located on other rivers is unconstitutional. Further, appellee sought a declaratory judgment that the legislative intent of the Arkansas General Assembly would be best effectuated by striking the unconstitutional portion and extending the addition to all river border cities within the state of Arkansas.

On August 16, 2004, the circuit court entered an order in favor of the appellee. The court first concluded that § 2 of Act 727 of 1997, as written, is unconstitutional. Then, the court attempted to cure the unconstitutionality of the Act by striking the words "the Mississippi" and substituting the words "a river," claiming that this would be the intention of the General Assembly. The circuit court entered an order on September 7, 2004, denying the appellant's motion to vacate or modify the order; and, appellant then filed his notice of appeal on September 14, 2004.

The first argument presented on appeal is that the circuit court erred by declaring that the classification, created by § 2 of Act 727 of 1997, between border cities located on the Mississippi River and border cities located on other rivers violates both the Arkansas and United States Constitutions. However, appellee maintains that the classification (1) is special or local legislation in violation of Amendment 14 to the Arkansas Constitution and (2) ignores that the equal protection and privileges and immunities provisions of Article 2, sections 3 and 18 of the Arkansas Constitution and under Amendment 14 to the United States Constitu-

tion that prohibit the arbitrary separation of some person, place, or thing from those upon which, but for the separation, it would operate. This court uses a "rational basis" standard of review when determining whether legislation is special or local and prohibited by Amendment 14. *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997); *Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993). This same standard is applicable to the constitutional issues raised by appellee under the equal protection and privileges and immunities provisions of the Arkansas and United States Constitutions. *Medlock v. Leathers*, 311 Ark. 175, 842 S.W.2d 428 (1992); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Therefore, all the constitutional arguments presented require the same analysis from this court, a rational basis review.

Amendment 14 of the Arkansas Constitution provides: "The General Assembly shall not pass any local or special act." Local legislation has been interpreted by this court to mean legislation that is arbitrarily applied to only one geographic area of the state, while special legislation has been interpreted to mean legislation that arbitrarily separates from the operation of an act some person, place, or thing from another. *Boyd v. Weiss*, 333 Ark. 684, 971 S.W.2d 237 (1998); *Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993). It is important to note that state statutes are presumed to be constitutional, and the party attacking the statute has the burden of showing that the challenged statute is clearly unconstitutional. *Id.*

Fort Smith, the city where appellee's business is adversely affected, is a river border city. Land annexed to Fort Smith after July 1, 2001 does not qualify to receive the border city exemption. However, if Fort Smith were to border the Mississippi River, the appellee's land would not be excluded from receiving that exemption. Appellee asserts that this classification between river border cities that lie on the Mississippi River and all other river border cities is arbitrary local and special legislation. The fact that a statute affects less than all of the state's territory does not automatically render it local or special legislation. *McCutchen v. Huckabee, supra*; *Littleton v. Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984). We have consistently held that an act of the general assembly that applies to only a portion of the state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997).

What we review is whether the decision to apply the act to only one area of the state is rational. *Id.*

This court has upheld the constitutionality of legislation that made a distinction between border cities and non-border cities; and even legislation that created a separate classification for border cities that were separated by a street-state-line. *Bollinger v. Watson*, 187 Ark.1044, 63 S.W.2d 642 (1933); *Boyd v. Weiss*, 333 Ark. 684, 971 S.W.2d 237 (1998). Act 63 of the 1931 Acts of Arkansas, which was a predecessor to § 26-55-210, provided that motor vehicle fuel tax in border cities would be the same rate as in the adjoining state, not to exceed a rate established in the Act. We concluded that the purpose of the act was to impose a tax for the use of the amount of motor fuel consumed in motor-driven vehicles, and the object was to obtain revenue for the building and maintenance of the highway system for the benefit of those who used it. *Id.* We recognized that the legislature had in mind that the rate of taxation on motor fuel was much lower in some of the bordering states than in this state because of the greater wealth and population in those states. *Id.* It was clear that the classification for border cities was made necessary, and bore a reasonable relation to the purpose and objective of the act, because inhabitants of border cities could go across the state line to purchase their fuel and deprive revenue from Arkansas. *Id.*

Years later, in *Boyd v. Weiss*, this court addressed the constitutionality of legislation that created the distinction between border cities that were separated by a street-state-line and border cities that were not. This classification was created by Act 48 of the 1977 Acts of Arkansas. Texarkana was the only city in Arkansas eligible for the benefit of the Act; the city of Texarkana was permitted to elect to adopt an additional one cent gross receipts tax in lieu of its residents paying income taxes. The constitutionality of that classification was challenged. *Boyd v. Weiss*, 333 Ark. 684, 971 S.W.2d 237 (1998). This court concluded that the stated purpose of Act 48 was to protect the city of Texarkana by exempting residents from state income taxes who might otherwise be induced to move to Texas, which would only require them to cross the street. *Id.* In addition, we noted that the classification was reasonably related to the purpose of the Act because residents of other border cities, like West Memphis, would have less incentive to relocate due to long distances or major waterways between their city and the next state. *Id.*

We now turn to the legislation currently being challenged, Act 727 of the 1997 Acts of Arkansas, which created a separate classification for border cities along the Mississippi River, not including border cities along other rivers. The Act itself stated a purpose in its subtitle: "[a]n act to assist cities to compete with other states by allowing for the adjustment of motor fuel rates." Therefore, the question before us now is whether or not limiting the border city exemption only to territory annexed after July 1, 2001 by river border cities that are along the Mississippi River, rather than all river border cities, is rationally related to the purpose of assisting cities to compete with other states. We hold that it is not.

Lines drawn by the legislature must be rationally related to the purpose of the Act, and may not be arbitrary. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 113 S. Ct. 2096 (1993). This court can conceive how granting the border city exemption to certain territory within the state, regardless of the date of annexation, might assist certain cities to compete with other states. However, the classification that limits the application of the Act only to border cities along the Mississippi River, a small portion of the state, we do not conclude is rationally related to that purpose. Appellant asserts that it is reasonable to assume that the general assembly was creating this classification because the Mississippi River border cities are in the least prosperous area of the state or because those cities were allegedly put at a competitive disadvantage to sellers in other border cities in this state since Mississippi River border cities were denied the border city rate from 1941 to 1997. However, the economic statistics cannot be rationally linked with assisting in their ability to compete with the border cities on the other side of the state line. The economic data that was provided to support that assertion was based on counties rather than cities. While the statistics easily illustrate that certain counties along the Mississippi River are less prosperous than other counties in the state, the statistics do not demonstrate how providing a tax benefit to annexed territory of a small number of cities within those counties could possibly help. Additionally, the fact that border cities along the Mississippi River were allegedly put at a competitive disadvantage compared to sellers in other border cities within the state from 1941 to 1997 is irrelevant. It is unreasonable to think that motor fuel buyers would drive to other border cities across the state and buy fuel there or in the state adjoining that

border city. This court is not limited to the rational bases suggested by the parties, rather we have the power to hypothesize a rational basis for the legislation. *Medlock v. Leathers*, 311 Ark. 175, 842 S.W.2d 428 (1992), *rehearing denied* (1993); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). However, the basis hypothesized or speculated by this court, or by any party, is still required to be rational and related to the purpose of the Act. *F.C.C. v. Beach Communications, Inc., supra; Streight v. Ragland, supra* (concluding that the court's conceived basis was rational, reasonably distinctive, and not arbitrary). We cannot hypothesize a basis for this classification that would be rational and related to purpose of the Act; instead, we find it to be arbitrary local and special legislation.

■ This court can find no basis upon which to justify how being along the Mississippi River, versus being along another, places the Mississippi River border cities in more need for the exemption to apply only to its annexed territory. The fact that the Mississippi River border cities were once excluded from the exemption is not a rational basis for presently giving those cities special treatment. Presumably, there was a rational basis for each time the motor-fuel tax exemption was permitted to apply to certain areas that excluded the Mississippi River border areas. In turn, there must now be a rational basis to give those areas special treatment over other areas in the state that are similarly situated, including the Fort Smith area. If we allow the simple fact that the Mississippi River border areas were once not eligible for the exemption to now provide a rational basis to give them special privileges, we fall into a trap similar to reverse discrimination. As pointed out in a racial discrimination case, "a court could uphold remedies that are ageless in their reach into the past, and timeless in their ability to affect the future." *Wygant v. Jackson Bd. of Education*, 476 U.S. 267, 106 S.Ct. 1842 (1986). General legislation affects all parts of the state similarly situated, whereas a local act affects only one locality arbitrarily selected. *Humphrey v. Thompson*, 222 Ark. 884, 263 S.W.2d 716 (1954) (holding that Act 273 of 1953, legislation that provided for the establishment of a vocational school in counties with a population of less than 6,000 according to a 1950 censes, was local and unconstitutional considering that population afforded no basis on which to justify such a classification and the legislation affected only one county). The act here is

clearly local and special legislation and in violation of Amendment No. 14 to the Arkansas Constitution. Therefore, we affirm the conclusion of the Circuit Court and hold that the classification created by § 2 of Act 727 of 1997, codified in § 26-55-211, is unconstitutional.

While we agree with the circuit court regarding the constitutionality of the Act, the court did not have the authority to strike words from the Act and replace them with new ones. The court attempted to guess the intent of the legislature by declaring that the words "the Mississippi" should be struck from § 26-55-211 and replaced with the words "a river." However, if the statute is clear, we will not search for the legislative intent; rather, the intent must be gathered from the plain meaning of the language used. *Cave City Nursing Home, Inc. v. Ark. Dept. of Human Serv.*, 351 Ark. 13, 89 S.W.3d 884 (2002). Substituting words for the original words included in the Act substitutes the judgment of the circuit court for that of the general assembly. We have declined to salvage facially unconstitutional statutes by narrowing the scope because to do so would be legislating. *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), *discussing Shoemaker v. State*, 343 Ark. 727, 38 S.W.3d 350 (2001). Article 4 of the Arkansas Constitution prohibits intrusion by the judiciary upon the legislative domain. *Arkansas State Highway Comm'n v. White Advertising Intern.*, 273 Ark. 364, 620 S.W.2d 280 (1981). Here, allowing the court to broaden the scope of § 26-55-211 by extending the statute's application from only river border cities on the Mississippi to all river border cities would be an intrusion into the legislative domain and we will not allow it.

With few exceptions we have held that once a statute is declared unconstitutional it must be treated as if it had never existed and legal contemplation is "as inoperative as if it had never been passed." *Weiss v. McFadden*, 356 Ark. 123, 148 S.W.3d 248 (2004). However, if only part of the statute is unconstitutional, then the remainder of the statute may stand unless the legislature would not have passed one part without the other. *Seagrave v. Price*, 349 Ark. 433, 79 S.W.3d 339 (2002); *Levy v. Albright*, 204 Ark. 657, 163 S.W.2d 529 (1942). The classification in § 26-55-211 that was created by § 2 of Act 1997 can easily be stricken, while leaving the rest of the statute in place. The statute should read as it

did before 1997, but the additional, constitutional changes to the statute that have been passed between 1997 and the present will remain:[1]

> "Whenever any territory included within the boundaries of any city, incorporated town, or planned community in this state is included within the border tax rate on motor fuel, as provided for in § 26-55-210, or by any other law of this state governing the border area tax rate on motor fuel, the same rate of tax on motor fuel that applies in the border tax area of the city, incorporated town, or planned community shall also apply to all sales of motor fuel within the boundaries of the city, incorporated town, or planned community. [This is where the unconstitutional classification was placed.] The provisions of this section shall apply only to that territory included within the limits of such city, incorporated town, or planned community on July 1, 2001, and shall not apply to territory added to or annexed to the city, incorporated town, or planned community thereafter.

In conclusion, the decision of the circuit court is affirmed in part and reversed in part. The classification in § 26-55-211, established by § 2 of Act 727 of 1997, is unconstitutional and the circuit court will be affirmed in that regard. However, the circuit court did not have the authority to substitute language within the Act. To allow such an action would be allowing the court to legislate. Therefore, the circuit court is reversed and the Act will read in accordance with this opinion unless and until further action is taken by the legislature.

CORBIN, BROWN, and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. The majority opinion correctly states the law that in order to salvage § 2 of Act 727 of 1997, now codified at Ark. Code Ann. § 26-55-211 (Supp. 2005), we must find a rational basis for the disparate tax treatment afforded border cities along the Mississippi River. The majority opinion is further correct when it states that this court may

---

[1] Act 1498 of 2001 amended 26-55-211 to extend the border rate to areas of otherwise qualifying cities, incorporated towns, or planned communities annexed on or before July 1, 2001, but not thereafter. The date has been changed several times throughout the years and would still apply regardless of the deletion of the Mississippi River border city exception.

determine a rational basis for disparate treatment on its own even though the reasoning is not stated in the legislation.

Where the majority jumps the track, however, is when it says there is no conceivable rational basis for distinguishing Mississippi River border cities and other border cities on a river like Fort Smith. That is simply wrong, and because of that, I would reverse.

The Department of Finance and Administration posits a *bona fide* reason for classifying Mississippi River border cities differently. That reason is that Mississippi River border cities need more favorable tax treatment, because they are located in an economically depressed area of the state as compared to Fort Smith, for example. Lessening the motor fuel tax burden of residents and businesses in a depressed area will, no doubt, have a salutary effect on the economy.

A second reason asserted by DFA is that from 1941 to 1997, Mississippi River border cities were not given the favorable tax treatment available to other river and non-river border cities. Indeed, Mississippi River border cities were expressly excluded from the legislation. *See* Act 383 of 1941. In 1997, that exclusion for Mississippi River border cities was removed by Act 727, as if to set right what had been denied these communities for more than fifty years. Surely, that qualifies as another reasonable explanation for the General Assembly's treatment of these cities in 1997. It is really beyond debate that the General Assembly has known precisely what it has been doing with Mississippi River border cities for more than fifty years. That is because these cities were first expressly excluded from favorable treatment in legislation in 1941, and then expressly included for such treatment in a 1997 act.

The danger, of course, with the majority's opinion is that it supplants clear legislative intent and strikes part of a sentence when, as already stated, valid reasons exist for the General Assembly's Mississippi River exemption. This court has traditionally been leery of striking down legislation on grounds of some classification, including whether it is local or special, because of the potential hazard that we would be legislating ourselves. That is why we have often stated that we have used the *hypothesized* rational basis standard and said that will suffice to save suspect legislation. *See, e.g., Johnson v. Sunray Servs., Inc.*, 306 Ark. 497, 816 S.W.2d 582 (1991); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). The *Streight* case is the seminal case for this proposition. There, we elaborated on what is meant by a rational basis:

> Before it is said that such hypothesizing is far afield, we re-emphasize that our role is not to discover the *actual basis* for the legislation. Our task is merely to consider if *any* rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose. Since we can reasonably conceive of lawful purposes for the state's classification scheme, it may not be held to have been arbitrarily enacted.

280 Ark. at 215, 655 S.W.2d at 464 (emphasis in original).

It was Mr. Geisbauer's burden to disprove any hypothesized rational basis for the Mississippi River exemption. *See id.* This he did not do. There are two reasonable and legitimate bases for the legislation. The majority may disagree with the hypothesized reasons, but this does not make them *per se* unreasonable. Nor does it justify striking the words, "the Mississippi" from the statute.

I respectfully dissent.

CORBIN and IMBER, JJ., join this dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. Under a rational-basis review, we are not to judge the wisdom, fairness, or logic of legislative choices. *Heller v. Doe*, 509 U.S. 312 (1993)(citing *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)). Classifications that do not involve a fundamental right or proceed along suspect lines are accorded a strong presumption of validity. *Id.* at 319. Furthermore, a legislature that creates "categories need not 'actually articulate at any time the purpose or rationale supporting its classification.' " *Id.* at 320 (citing *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992)). "Instead, a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Id.* (citing *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313). States, moreover, have no obligation to produce evidence to sustain the rationality of statutory classifications. *Id.* "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (quoting *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315.) "A statute is presumed constitutional . . . and '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it' . . . *whether or not the basis has a*

*foundation in the record." Id.* at 320-21 (citing *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)) (emphasis added). In determining whether a rational basis for the legislation exists, we are not required to discover the *actual* basis for its enactment, but rather we are allowed to hypothesize the facts giving rise to the classification. *Bosworth v. Pledger*, 305 Ark. 598, 810 S.W.2d 918 (1991); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). In sum, the statute remains constitutional if this court can hypothesize any conceivable basis that is rationally related to the statute, whether or not the basis has a foundation in the record. Because it is possible to hypothesize a basis that is rationally related to the statute at issue, Ark. Code Ann. § 26-55-211 (Repl. 1997), I must respectfully dissent.

When the General Assembly originally enacted the predecessor statute to section 26-55-211 in 1941, the border-city tax rate was expressly denied to Arkansas cities bordering the Mississippi River. Ark. Stat. Ann. § 75-1107(A) (1947); Acts 1941, No. 383, § 5. Arguably, there was a rational basis for the denial of the border-city tax rate to those border cities. In 1941, it would have been highly unlikely for motor fuel buyers to drive long distances and cross over a major waterway, the Mississippi River, to neighboring states for the purpose of buying fuel. In other words, at that time, the reason for a border-city tax rate did not exist for Arkansas cities bordering the Mississippi River. Consequently, Mississippi River border cities were excluded from the statute's tax benefit. That exclusion remained in effect for more than fifty years. In 1997, however, the General Assembly simultaneously struck the portion of section 26-55-211 that expressly denied the border-city tax rate to Arkansas cities bordering the Mississippi River and added the provision that is the subject of this appeal.

It is important to note that interstate travel increased substantially during the fifty years preceding the 1997 amendment to section 26-55-211. The development and improvement of state and interstate highways fostered the increase in interstate travel. More specifically, travel across the Mississippi River between eastern Arkansas and neighboring states became easier and more frequent. Moreover, with the expansion of interstate trucking, more trucks traveled the highways through eastern Arkansas and crossed the Mississippi River. Likewise, there was an increased likelihood that motor fuel buyers would drive across the mighty Mississippi River for the purpose of buying fuel in neighboring states. As a result of increased interstate travel through eastern Arkansas, more tax revenues would have been needed to repair

and maintain the roads in that area. In addition, Arkansas would have been losing valuable fuel tax revenues to neighboring states.

With the enactment of the 1997 amendment to Ark. Code Ann. § 26-55-211, the General Assembly granted Mississippi River border cities the right to annex territory that would qualify for the border-city tax rate, regardless of the date of the annexation. As such, section 26-55-211 simply created a way to raise needed tax revenues in an economically blighted area — an area that had been statutorily denied the right to any border-city tax benefit for over fifty years. But for that exclusion, Mississippi River border cities might have benefitted from annexing more territory during those years.

The majority posits that it "can find no basis upon which to justify how being along the Mississippi River, versus being along another river, places the Mississippi River border cities in more need for the exemption to apply only to its annexed territory." Yet, as set forth above, it is in fact possible to hypothesize a basis that is rationally related to the statute at issue, Ark. Code Ann. § 26-55-211. Therefore, I must conclude that there is a rational basis for the Mississippi River border-city classification. That classification should be upheld against the equal-protection challenge under the Arkansas and United States Constitutions and the special-legislation challenge under Amendment 14 of the Arkansas Constitution.

For the above-stated reasons, I must respectfully dissent.

CORBIN and BROWN, JJ., join this dissent.